UNITED STATES *v.* AMERICAN EXPRESS CO. (No. 566).[1]

CAVIAR—"OTHER PRESERVED," PARAGRAPH 270, TARIFF ACT OF 1909.
    An examination of the legislative record shows that the "situation as it existed" was known when the paragraph making caviar dutiable under tariff act of 1909 was "pressed upon the attention of the legislative body"; and the words "other preserved" employed in that paragraph are not to be taken to defeat a manifest intention of the Congress, and there being no evidence to show what process the caviar of the importation may have been subjected to, it was dutiable under paragraph 270, tariff act of 1909.—United States *v.* Cohn (2 Ind. Ter., 474); Hubbard *v.* City of Taunton (140 Mass., 467); Kelly *v.* The People (132 Ill., 363). Hansen *v.* United States (T. D. 30769) distinguished.

United States Court of Customs Appeals, May 22, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7152 (T. D. 31205).

[Reversed.]

*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

*Joseph G. Kammerlohr* (*John Giblon Duffy* of counsel) for the appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise is caviar imported in tins. It was assessed for dutiable purposes at 30 per cent. ad valorem under the appropriate provision of paragraph 270 of the tariff act of 1909, which reads:

    270. * * * Caviar, and other preserved roe of fish, thirty per centum ad valorem.

---

[1] Reported in T. D. 31636 (20 Treas. Dec., 1109).

The allegations of the importer, appellee here, is that the merchandise is entitled to free entry under paragraph 560 of the act, which provides:

560. Eggs of birds, fish, and insects (except fish roe preserved for food purposes): * * *

The board sustained the protest upon the statement—

From an examination of the testimony it is quite evident that the merchandise is in all respects like that passed upon by the United States Court of Customs Appeals in the case of Hansen v. United States (T. D. 30769), wherein such merchandise was granted free entry as eggs of fish not preserved for food purposes.

While we do not believe this finding of fact supported by the affirmative evidence in the record, we do not deem the facts controlling in this case.

The collector returned the merchandise as "caviar packed in printed tin cans."

The only testimony adduced at the hearing was that of the examiner in the office of the local appraiser at New York, who testified that the merchandise was in the same condition as imported as was the merchandise the subject of Weber v. United States. It seems manifest that the examiner was confining that statement as to the condition of the tins in which the merchandise was packed; that is, that it was packed in tin cans with printing thereon. That was the only testimony upon which the finding of the board was based.

The record in the Hansen case showed the precise processes adopted for the preparation and preservation of the merchandise from the time it was taken from the sturgeon of the Caspian Sea until the time it entered into ultimate consumption. There is not a word in this record as to any of the processes adopted in the preparation or preservation of this merchandise at any time, save that it was imported in tin cans not hermetically sealed, but having labels printed thereon. It is obviously consistent with this proof that it may have been subject to various and innumerable processes of preservation in that condition. We do not think, therefore, that the testimony in this record establishes that the merchandise was similar to that the subject of the Hansen decision by this court. We think, however, that this case may be properly determined as a question of law.

It was further held by the board that the words "other preserved," in paragraph 270, related back to and modified the word "caviar," effecting that all caviar made dutiable by this paragraph must be *preserved* caviar. We do not agree in this conclusion.

The question of intent of the legislative body in all cases of statutory construction and interpretation, if it can be ascertained, is of

primary importance. In that ascertainment the Supreme Court of the United States has laid down as one of the canons of construction the following:

Again, another guide to the meaning of a statute is found in the evil which it is designed to remedy, and for this the court properly looks at contemporaneous events, the situation as it existed, and as it was pressed upon the attention of the legislative body. Holy Trinity Church *v.* United States (143 U. S., 457, 463); United States *v.* Trans-Missouri Freight Association (166 U. S., 290).

What, then, was the situation "as it existed," and what, with reference to this matter, "was pressed upon the attention of the legislative body"?

It appears from the record that at the time of the enactment of the tariff act of August 5, 1909, the attention of the Congress was called to the fact that caviar was not specifically provided for in any of the provisions of the tariff act of 1897, and that it had been held by the court in Menzel *v.* United States (142 Fed. Rep., 1038; T. D. 27118), February 1, 1906, that when imported in tin packages it was dutiable by similitude as fish in tin packages at the rate of 30 per cent ad valorem; that that was true also when imported in packages of less than 100 pounds; but when imported in packages of 100 pounds or over it paid a specific duty of three-fourths of 1 cent per pound, the equivalent of eighty-five one-hundredths of 1 per cent.

In the presence of this "situation as it existed," and "the attention of the legislative body" being directed thereto, as indisputably appears by this record, the express provision for caviar in paragraph 270 was inserted in the tariff act of 1909 and became the law.

While this status legally informs the court of facts from which an intention to make caviar dutiable is manifestly shown, that intent alone can not be held to constitute the law unless the language actually employed by Congress to that end legally and fairly effects this manifest intent and purpose. Jones *v.* Guaranty, etc., Co. (101 U. S., 622, 626); Holy Trinity Church *v.* United States (143 U. S., 457, 463); Smythe *v.* Fiske (23 Wall., 374, 380); United States *v.* Babbit (1 Black., 55, 61); Raymond *v.* Thomas (91 U. S., 712, 715); Indianapolis, etc., R. R. Co., *v.* Horst (93 U. S., 291, 300); Hawaii *v.* Mankichi (190 U. S., 197, 212); Postmaster General *v.* Early et al. (12 Wheat., 135, 152).

That caviar is expressly designated in the dutiable section of the law establishes that it was the intent of Congress to make caviar dutiable, and that being established as the intent of Congress, the inquiry is, Is the language adopted for that purpose sufficient or insufficient? Has the employment by the Congress in this provision of the words "other preserved" necessarily defeated that intent? We think not.

There are two well-settled rules of interpretation applicable to the word "other" as used in this statute. The one applies its modifying force to that which precedes it which would include the word caviar; the other applies its modifying force to the subjects following. It is the duty of the court in such cases to adopt that rule of construction which will give effect to the intention of Congress as ascertained, and not give effect to that rule of interpretation which would defeat the manifest purpose of the lawmakers. Each of these rules of application is supported by abundant authority, but the principle determining which and when each shall be applicable according to the ascertained intent of the lawmakers is a well-settled and uniform rule. Thus, in United States v. Cohn (2 Ind. Ter., 474, 493, 494), the United States Court of Appeals had before it for construction the words "other intoxicating drinks" in an act of Congress prohibiting the sale of any "vinous, malt, or fermented liquor or of any other intoxicating drinks whatsoever." The court stated:

It is contended by the learned counsel for the defendant that the words "and *other* intoxicating drinks," used after the language prohibiting the manufacture, sale, giving away, etc., of any vinous, malt, or fermented liquors, are to be taken as words limiting and explaining the meaning of those words which precede them to be that the articles thus named are intoxicating also. We think that this is *not necessarily the only construction* that can be given to the words. We have already seen that the legislature, in the exercise of the police powers of the Government, may, acting upon a subject within its powers, designate even a harmless article as being hurtful, and that such designation is binding on the courts. So in this case we think that the statute is subject to the construction that Congress intended to say that vinous, malt, and fermented liquors were intoxicating, and then, because a large class of intoxicants such as whiskies, brandies, gin, and all other ardent and spirituous liquors had not been named in the statute, the words "all other intoxicating liquors" were intended to cover them. And whatever may be the exact grammatical construction of the language courts are not always bound to follow it. If by other methods allowed by the law it can be determined that Congress otherwise intended, the court will give such construction to the statute by lawful methods it may find Congress actually intended. *The intent of the statute is law.*

So the Supreme Court of the State of Massachusetts, in the case of Hubbard v. City of Taunton (140 Mass., 467), having before it for interpretation the phrase "for armories, for the celebration of holidays, and for *other* public purposes," said:

The word "other" implies that the celebration of holidays is a public purpose within the meaning of the act, and indicates that purposes which are public only in that sense are included within its scope, although they look rather more obviously to increasing the picturesqueness and interest of life than to the satisfaction of rudimentary wants, which alone we generally recognize as necessary. We know of no simple and merely logical test by which the limit can be fixed. It must be determined by practical considerations. The question is one of degree. But, in reply to the petitioner's argument, we may say that, if the purpose is within the act, we do not see why the city council may not create the occasion. *Taking into account the history and language of the act,* the safeguards attached to the exercise of the power, the smallness

of the sum allowed to be expended, and the fact that it has long been assumed to be within the power of cities to give such concerts in the open air, we are not prepared to say that a case is presented for an injunction.

The Supreme Court of the State of Illinois, in Kelly *v.* People (132 Ill., 363), applied the rule in a criminal case wherein the language of the statute was "larceny or any other felony," declaring:

> We therefore conclude that the words "or other felony," in section 23, were intended to designate such other offenses besides murder, rape, mayhem, robbery, and larceny as amount to felonies, and that they were not intended to limit the offense of assault with intent to commit larceny to assault with intent to commit that higher grade of larceny which is defined to be felony.

The doctrine was announced by the Supreme Court of the State of Wisconsin in a similar criminal statute speaking of larceny "or other felony," the court stating:

> We are unable to give the statute the construction contended for. The statute must be read as though instead of the words "or other felony" it had been written "or any other offense for which the offender, on conviction, shall be liable, by law, to be punished by imprisonment in the State prison." (Nichols *v.* The State, 35 Wis., 308.) We think the term "or other felony" is not a limitation on what preceded, but is inserted to extend the scope of the section to other offenses not specifically named therein. Thus, an intent to commit arson or mayhem or to inflict upon some person great bodily harm, and doubtless other offenses, are brought within the section by the use of that term.

The application of the doctrine, as justified by the Supreme Court of the State of Wisconsin, is properly applicable to customs revenue cases to give effect to the manifest intent of the Congress by the use of such phrases by way of extension.

Whether the word "preserved" before the word "other" takes import from the word "caviar" as following and influenced by that word is not here necessary of decision. The whole sentence might be held a legislative determination that that which constitutes "preserved roe of fish" shall be deemed to be a condition of fish roe resembling conditions or degrees of preservation represented by caviar. Nor do we deem it necessary to consider whether or not the status or degree of preservation of "preserved roe of fish" following the word "caviar" legislatively fixes the status or degree of preservation of caviar in order to bring it within the statute. Without deciding or giving weight to any of these latter suggestions we think the unmistakable intent of the Congress was to make all caviar dutiable at 30 per cent ad valorem, and since that intent can be made effective by applying the well-settled rule of interpretation in the manner considered to the language here employed by Congress it is our duty to so do. It follows that the Board of General Appraisers erred in its conclusion.

The decision of the Board of General Appraisers is therefore *reversed.*