UNITED STATES *v.* KAGAWA & Co. *et al.* (No. 1321).[1]

1. PRESERVED.

When fish are dried, whether by means of the heat of the sun or otherwise, being thereby saved from decomposition for a substantial period of time, they are "preserved" within the common meaning of that term.

2. KAZUNOKO—FISH ROE.

The term "preserved" in paragraph 270, tariff act of 1909, does not bear a restricted interpretation, and the provision there for "caviar, and other preserved roe of fish" was intended to classify all fish roe, which had been treated in any manner for preservation for food purposes, as preserved fish roe.

United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7507 (T. D. 33911).
[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Frank L. Lawrence,* special attorney, on the brief), for the United States.
*William Hayward* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case was imported from Japan under the tariff act of 1909. It is called "Kazunoko" and consists of the roe of the herring in a dried condition.

<hr>

[1] Reported in T. D. 34934 (27 Treas. Dec., 507).

The collector classified the article as preserved fish roe, dutiable as such under paragraph 270 of the act, and accordingly assessed the same with duty at the rate of 30 per cent ad valorem.

The importers protested against the assessment, claiming free entry for the merchandise as fish eggs under paragraph 560 of the act.

The protest was submitted to the Board of General Appraisers and was sustained, from which decision the Government now appeals.

The following is a copy of the two competing paragraphs above cited:

270. Fish (except shellfish) by whatever name known, packed in oil, in bottles, jars, kegs, tin boxes, or cans, shall be dutiable as follows: When in packages containing seven and one-half cubic inches or less, one and one-half cents per bottle, jar, keg, box, or can; containing more than seven and one-half and not more than twenty-one cubic inches, two and one-half cents per bottle, jar, keg, box, or can; containing more than twenty-one and not more than thirty-three cubic inches, five cents per bottle, jar, keg, box, or can; containing more than thirty-three and not more than seventy cubic inches, ten cents per bottle, jar, keg, box, or can; all other fish (except shellfish) in tin packages, thirty per centum ad valorem; fish in packages, containing less than one-half barrel, and not specially provided for in this section, thirty per centum ad valorem; caviar, and other preserved roe of fish, thirty per centum ad valorem.

560. Eggs of birds, fish, and insects (except fish roe preserved for food purposes): *Provided, however,* That the importation of eggs of game birds or eggs of birds not used for food, except specimens for scientific collections, is prohibited: *Provided further,* That the importation of eggs of game birds for purposes of propagation is hereby authorized, under rules and regulations to be prescribed by the Secretary of the Treasury.

It may be repeated that the present issue is whether the merchandise in question is dutiable under the provision for preserved fish roe appearing in the last clause of paragraph 270, or is entitled to free entry under the provision for fish eggs in paragraph 560, both above copied.

It appears from the testimony that the present article comes from the island of Hokido, Japan, and is prepared during a season of the year when there is no rainfall there. The roe is taken from the herring and is spread thinly upon mats to be dried by the wind and sunshine. These mats are moved or turned at intervals, and after about two weeks of this treatment the roe is thoroughly dried. No preservative substance of any kind is applied to the roe, the sole drying agencies being the sunshine and the wind; but if the roe were not thus purposely exposed to the action of these agencies it would quickly spoil. When thus dried the roe is edible, and will keep without spoiling for two or three years; but the crop of the same year is preferred for consumption. According to Japanese custom the article is eaten only about the beginning of the new year. At that time the dried roe is soaked in water, "shoyu" is poured upon it, and it is eaten as a food appropriate to the season.

As appears from the foregoing statement the sole question in the case is whether the herring roe, thus dried for food purposes, is

"preserved" within the meaning of paragraphs 270 and 560 above quoted.

It is within common knowledge that the word "preserved" bears a general signification which is quite broad enough to include a process like that above described. In relation especially to fish and meat the term in question was early applied to processes of drying alone.

The following quotations tend to sustain this statement:

Encyclopædia Britannica:

*Food preservation.*— * * * Preservation by drying. * * * By the removal of water the most perishable materials, like meat or eggs, can be rendered unchangeable, except so far as the inevitable oxidation of the fatty substances contained in them is concerned and which is independent of life action. The drying of meat, upon which a generation ago inventors bestowed a great deal of attention, has become almost obsolete, except for comparatively small articles or animals, like ox tongues or tails and fish. * * *

International Encyclopædia:

*Food, preservation of.*—* * * Desiccation is probably the oldest, as it is the simplest method of preserving fruits, vegetables, and even meats from decay. As organic life requires moisture, the thorough drying of the food checks its growth. This was first done in the sun or by the fire. * * *

Johnson & North case, G. A. 1250 (T. D. 12566), before the Board of General Appraisers (1892):

LUNT, *General Appraiser.* * * * The most ancient and common methods of preserving fish are by drying, salting, smoking, and pickling. * * *

It may be accepted without further authority that when fish are dried, whether by means of the heat of the sun or by other means, and are thereby saved from decomposition for a substantial period of time, they may properly be said to be "preserved" within the common meaning of that term. There is nothing in the paragraphs now under review which would indicate that Congress intended the word as therein used to bear a restricted interpretation. Indeed a reading and comparison of the provisions in question lead to the opposite conclusion.

In considering this issue it may be well also to review briefly the history of the provisions in question.

In the tariff act of October 1, 1890, eggs were made dutiable by the dozen, and smoked, dried, salted, pickled, and frozen fish by the pound, both by *eo nomine* provisions, there being in the act however, no dutiable provision *eo nomine* for fish roe. In that act for the first time appeared the prototype of the free-list paragraph now in question, the same appearing without exception or proviso of any kind and reading simply as follows:

(Free list.)  561.  Eggs of birds, fish, and insects.

Under this act, in the Sheldon case, G. A. 372 (1891) (T. D. 10877), the Board of General Appraisers held that caviar, salted and packed in tins, was entitled to free entry as eggs of fish, saying:

There is no limitation imposed upon the kind of fish eggs in paragraph 561, or whether fresh, pickled or preserved.

The act of August 27, 1894, contained no substantial amendment relating to the present subject, paragraph 471 of that act simply repeating the free-list provision of the preceding act for eggs of birds, fish, and insects. Under this act, in the Bock case, G. A. 2897 (1895) (T. D. 15716), the Board of General Appraisers held that canned cod roe packed in hermetically sealed tins and processed for preservation was entitled to free entry as fish eggs, saying:

There is nothing in paragraph 471 which limits the free entry of fish eggs to such as are capable of being hatched. Although these eggs have been subjected to heat in processing and are designed for use as a delicate article of food, still they have not lost their identity as fish eggs and therefore the protest must be sustained.

In the tariff act of July 24, 1897, duty was again laid *eo nomine* upon eggs and also upon smoked, salted, pickled, and frozen fish, but again there was no dutiable provision for fish roe *eo nomine*. However, the free-list provision was substantially amended, appearing in the following terms:

549. Eggs of birds, fish, and insects: *Provided, however,* That this shall not be held to include the eggs of game birds or eggs of birds not used for food, the importation of which is prohibited except specimens for scientific collections, nor fish roe preserved for food purposes.

This was the first enactment of the exception for "fish roe preserved for food purposes," as part of the free-list provision, but, as already stated, no correlative amendment for a duty upon such preserved fish roe *eo nomine* appeared in the dutiable provisions of the act. The following decisions relate to that act:

In the Odo case, G. A. 5120 (1902) (T. D. 23657), the Board of General Appraisers held that canned fish roe processed with heat and packed in hermetically sealed cans for food purposes was not entitled to free entry under paragraph 549 of that act as eggs of fish, but was dutiable as a nonenumerated manufactured article. The board refused to sustain the Government's contention for an assessment of the article by similitude with dried fish, saying:

It is a manufactured product in that it has been prepared and brought into condition suitable for food; and it is not enumerated in any of the schedules of the tariff act. We find that this merchandise is fish roe preserved for food purposes, and hold that it is a nonenumerated manufactured article. * * *

In the Kojima case, G. A. 5424 (1903) (T. D. 24682), the Board of General Appraisers, dealing with "dried fish roe packed in tins," overruled the decision just above cited and held that the merchandise was dutiable by similitude with fish in tins and not as a nonenumerated manufactured article.

In the Harper case, Abstract 16731 (1907) (T. D. 28409), the merchandise being "dried fish eggs," the Board of General Appraisers held the article to be dutiable by similitude with "fish, dried," and sustained an assessment to that effect.

The three decisions under the tariff act of 1897 which have just been severally cited all relate to fish roe which was dried by processing, and all held the same to be within the exception which excludes "fish roe preserved for food purposes" from the free list of the tariff act of 1897, although differing in the classification of the same for duty under that act.    See also the Benson case, Abstract 1237 (T. D. 25261), Menzel v. United States (135 Fed., 918; T. D. 25875), same case (142 Fed., 1038; T. D. 27118), the Tasker case, Abstract 10410 (T. D. 27209) (this case relating to inedible fish roe), and the case of Commission Co., Abstract 33842 (T. D. 33795).

At the tariff revision of 1909 the free-list provision for fish eggs excepting "fish roe preserved for food purposes" was reenacted in substantially the same form as in the act of 1897, and a corresponding provision for duty upon "caviar, and other preserved roe of fish" was added to the fish schedule, as appears by the copies of paragraphs 270 and 560 above given.

The decisions under the act of 1897 above cited tend strongly to sustain the Government's contention in this case.    Those decisions all held that fish roe dried by heat processing was dutiable as "preserved fish roe" under the provisions in question, and the decisions in question were all published before the tariff revision of 1909.    No emphasis was laid in any of these decisions upon the methods whereby the fish roe in question had been dried; in some of the cases the merchandise was simply described as "dried fish roe."    It is therefore reasonable to believe that in the tariff revision of 1909 the same term was employed by Congress with the same meaning, and that it was intended to cover fish roe which had been dried, regardless of the processes employed in drying the same.

This view finds further confirmation in the unqualified use of the word "caviar" in the dutiable provision of the act of 1909, whereby all caviar prepared for food purposes was made dutiable regardless of the extent to which it had been advanced in condition prior to importation.    See Hansen v. United States (1 Ct. Cust. Appls., 1; T. D. 30769); United States v. American Express Co. (2 Ct. Cust. Appls., 95; T. D. 31636).    By this provision for "cavair, and other preserved roe of fish," Congress evidently intended to classify all fish roe which had been treated in any manner for preservation for food purposes as preserved fish roe and to subject the same to duty as such under the fish schedule.

In this view of the case the decision of the board is *reversed*.