MOSCAHLADES BROS. *v.* UNITED STATES (No. 1549).[1]

1. PRESERVED.
   The constant presence and application of heat or cold as an arresting agency of decomposition does not constitute preservation.

2. FISH ROE, SALTED, WHEN NOT PRESERVED.
   Fish roe, salted sufficiently to preserve it during the winter, but not during the summer, in the climate of New York, is not "preserved" within the meaning of paragraph 216, tariff act of 1913.—United States *v.* Kagawa (5 Ct. Cust. Appls., 388; T. D. 34934) distinguished.

United States Court of Customs Appeals, December 3, 1915.

APPEAL from Board of United States General Appraisers, Abstract 47286.
[Reversed.]

*Hatch & Clute* (*Edward F. Hatch* and *Walter F. Welch* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The sole issue proffered by this appeal presents the inquiry, When is fish roe "preserved" within the provisions of paragraph 216 of the tariff act of 1913, levying duty upon "caviar and other preserved roe of fish"? The appellants, importers, maintain the importation, which was of fish roe, entitled to free entry under paragraph 478 of that act as "eggs of * * * fish." The board overruled the protests, remarking:

The importers' counsel points out in his brief that the issue here is the same as that suggested by the Court of Customs Appeals in United States *v.* Adams Express Co. (2 Ct. Cust. Appls., 95; T. D. 31636). However, since that decision Judge Martin, of that court, in United States *v.* Kagawa (5 Ct. Cust. Appls., 388; T. D. 34934), speaking of the same issue arising under similar provisions of the act of 1909, says:

By this provision for "caviar and other preserved roe of fish" Congress evidently intended to classify all fish roe which had been treated *in any manner* for preservation for food purposes as preserved fish roe, and to subject the same to duty as such under the fish schedule. (Italics theirs.)

The interpretation placed upon the Kagawa decision does not seem warranted. Obviously the court meant "in any manner" to refer to any *method* and not to any *degree* of preservation.

---

[1] Reported in T. D. 35973 (29 Treas. Dec., 683).

While the record in this appeal is too meager to advisedly attempt a fixed definition of the word "preserved," as used in paragraph 216, or even to establish as a precedent the dutiable classification of such merchandise, there is sufficient here for decision as to the particular case.

The only witness called was a member of the importing firm. He is of foreign tongue and patently labored under the difficulty that he did not catch the full import of the questions asked and could not express with clearness or distinctness the answer intended to be made.

There seems to be no question, however, that the importation was of fish roe from fish caught in the Caspian Sea and which had there been treated with salt and salt water sufficiently to effect at least a stage of preservation. The merchandise was imported at the port of New York, and the most that can be gleaned from the record is that by reason of and during the colder winter months at that port it could be kept without other preservative; that it was usually consumed, sold, or shipped therefrom before or during February or March; that during the summer and warmer months it would not keep outside of cold storage.

Was this merchandise "preserved" as the word is used in the statute?

In United States v. Kagawa, *supra*, this court, after reviewing the definitions of the word, said:

It may be accepted without further authority that when fish are dried, whether by means of the heat of the sun or by other means, and are thereby saved from decomposition for a substantial period of time, they may properly be said to be "preserved" within the common meaning of that term.

So far as shown by this record the condition of this merchandise as imported was not within that definition. It may well be questioned if any agency, such as natural or artificial cold, so applied that it *arrests* decomposition so long only as applied, and which as applied in no sense effects and so far stabilizes a condition of the article itself, whereby, without the presence of the agency, decomposition would not be arrested for any substantial period of time, is a "preservative," or that such would be a "preserved" condition within the act. A fair analysis of the record fails to show any condition of preservation of this merchandise which so arrests decomposition for any substantial period of time without the constant presence of the arresting agency of natural or artificial heat or cold. Cold storage is not preservation within the act. Neither is natural freezing.

Apt illustration is afforded. We would hardly say the prehistoric dinotherium, edible flesh of which is still found in certain of the arctic regions, are "preserved" in any sense of that term as used in our tariff laws.

Fish eggs and fish in this status would seem to more nearly respond to the tariff description of earlier acts (tariff act of 1897, paragraph 261; tariff act of 1890, paragraph 293), as "fish * * * frozen, * * * or otherwise *prepared for* preservation." Congress seems in these paragraphs to have declared fish frozen to be only "prepared for" and not actually "preserved." That tariff enumeration, however, being omitted from the present act, the pertinent legislative conspectus has included within the term "eggs of * * * fish" all such eggs as those here in question that have not been so far processed as to have reached the next enumerated tariff status "preserved roe of fish."

It was upon the fact that the caviar was preserved from decay by the agency in part of constantly applied freezing that this court held it not preserved within a similar provision of the statute in Hansen *v.* United States (1 Cust. Appls., 1; T. D. 30769).

The court is of the opinion that such does not constitute "preservation" within the language of the statute. Confining. the decision, therefore, to the particular record, the decision of the board should be, and is, *reversed.*