UNITED STATES *v.* POST FISH CO. (No. 2523) [1]

1. CONSTRUCTION, PARAGRAPH 1569, TARIFF ACT OF 1922—CHANGE IN LANGUAGE SIGNIFYING CHANGE IN MEANING—KNOWLEDGE OF JUDICIAL HOLDINGS IMPUTED TO CONGRESS.

Free-list paragraph 478, tariff act of 1913, included fish eggs "(except fish roe preserved for food purposes)." The corresponding paragraph, 1569, Tariff Act of 1922, includes fish eggs "(except fish roe for food purposes)." In *Moscahlades Bros.* v. *United States,* 6 Ct. Cust. Appls. 399, it was held that fish roe which had been salted sufficiently to effect a degree of temporary preservation was not "preserved" within the meaning of that word in the exception of paragraph 478, tariff act of 1913. Knowledge of this decision is imputable to Congress, and the omission, by the act of 1922, of the word "preserved" from the act of 1913, must be given a meaning. Under these rules, it is obvious that the intention was to meet the decision and to exclude from the free list *all* fish roe for food purposes.

2. CONSTRUCTION, PARAGRAPH 721, TARIFF ACT OF 1922—"FISH ROE * * * PACKED IN ICE."

Paragraph 721, Tariff Act of 1922, included "Fish roe for food purposes packed in ice." This means arranged with ice in a compact and orderly bundle or package, for handling, transportation, or preservation, as a distinct and independent item of commerce. It does not include fish roe in containers which are set upon ice during transportation if the weather should require it.

[1] T. D. 41022.

3. FRESH FISH ROE.

Fresh.fish roe, not packed in ice, can not be classified under the provision of paragraph 721, Tariff Act of 1922, for "fish roe for food purposes, packed in ice or frozen, prepared or preserved, by the addition of salt in any amount, or by other means," either by similitude (*United States* v. *Conkey & Co.,* 12 Ct. Cust. Appls. 552, T. D. 40783 distinguished) or directly. It is not classifiable under free-list paragraph 1569 as eggs of fish, for that paragraph expressly excludes "fish roe for food purposes." It is, then, relegated to the provision of paragraph 1459 for nonenumerated unmanufactured articles.

## United States Court of Customs Appeals, June 23, 1925

APPEAL from Board of United States General Appraisers, Abstract 48315

[Reversed and remanded.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Peter F. Abeles,* special attorneys, of counsel), for the United States.

No appearance for appellee.

[Oral argument May 21, 1925, by Mr. Abeles]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The merchandise imported in this case consists of fish roe for food purposes. It was classified for duty by the collector at 30 per centum ad valorem under paragraph 721, Tariff Act of 1922. The importer protested, claiming the same to be free under paragraph 1569 as eggs, or, in the alternative, dutiable at 10 per centum ad valorem under paragraph 1459 of said act, as raw or unmanufactured articles not enumerated.

The court below sustained the protest and held the goods free under said paragraph 1569. From this judgment the Government appeals, insisting the collector's classification should be sustained, or that the goods should be assessed for duty by similitude under paragraph 721, or under said paragraph 1459.

The material provisions of the law are:

721. Crab meat, packed in ice or frozen, or prepared or preserved in any manner, 15 per centum ad valorem; fish paste and fish sauce, 30 per centum ad valorem; caviar and other fish roe for food purposes, packed in ice or frozen, prepared or preserved, by the addition of salt in any amount, or by other means, 30 per centum ad valorem.

1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

1569. Eggs of birds, fish, and insects (except fish roe for food purposes): *Provided,* That the importation of eggs of wild birds is prohibited, except eggs of game birds imported for propagating purposes under regulations prescribed by the Secretary of Agriculture, and specimens imported for scientific collections.

The testimony shows that the importer sends its vessels to Pelee Island, Ontario, Canada, when the sturgeon run comes on. By the use of these vessels the sturgeons are collected and purchased from the fishermen who catch them. The roe sturgeons are then opened, the roe or eggs extracted in a mass, and these are placed in pails or containers of a capacity of about 3 gallons each. These are then imported without treatment of any kind at Sandusky, Ohio. The testimony further shows that the vessels engaged in this business have no refrigerating tanks, but carry ice in boxes upon the decks for the purpose of icing the fish which are being transported. Ordinarily, it appears, the eggs are imported in the containers without the application of ice in any way; sometimes, however, in hot weather the receptacles containing the fish roe are set upon the ice contained in these ice boxes heretofore mentioned and thus imported. No proof is made as to whether the shipment in question here was so treated.

. As no claim is made that the fish roe here has been prepared, preserved, or frozen, the collector's classification, under paragraph 721, can be sustained only if it appears that the roe was "fish roe * * * packed in ice."

The classification of fish roe has been before this court on several occasions. In *Hanson* v. *United States*, 1 Ct. Cust. Appls. 1, fresh caviar was imported and was claimed to be "preserved" within the excepting clause in paragraph 549 of the tariff act of July 24, 1897:

549. Eggs of birds, fish, and insects: *Provided, however,* That this shall not be held to include * * * fish roe preserved for food purposes.

The proof showed that roe was taken from the fish in the Caspian Sea. It was then rubbed through a sieve, hardened with a salt brine, dried by heat, and then packed and shipped, refrigerated. It was further shown this was not a permanent, but temporary, preservation. The roe was held to be not "preserved."

A similar paragraph in the tariff act of August 5, 1909, was before the court in *United States* v. *American Express Co.*, 2 Ct. Cust. Appls. 95. The same act was involved in *United States* v. *Kagawa*, 5 Ct. Cust. Appls. 388. In the case last cited the court held that the expression in the act, "Caviar, and other preserved roe of fish," must be held to include "all fish roe which had been treated in any manner for preservation for food purposes."

In *Moscahlades Bros.* v. *United States*, 6 Ct. Cust. Appls. 399, paragraphs 216 and 478 of the tariff act of October 3, 1913, were under consideration. The relevant portions of said paragraphs were:

216. Caviar and other preserved roe of fish, 30 per centum ad valorem; fish, skinned or boned, ¾ of 1 cent per pound.

478. Eggs of poultry, birds, fish, and insects (except fish roe preserved for ood purposes):

In the opinion filed in that case the court distinguishes and analyzes *United States* v. *Kagawa, supra,* and holds that fish roe, taken in the Caspian Sea and treated with salt and salt water sufficient to effect a degree of temporary preservation, was not "preserved."

When the Tariff Act of 1922 was considered and passed, Congress, in revising paragraph 478 of the tariff act of October 3, 1913, as paragraph 1569 of the new act, instead of using the language, "except fish roe preserved for food purposes," as it appeared in said paragraph 478, deliberately omitted the word "preserved" leaving the excepting clause, "except fish roe for food purposes."

This change of language must be given effect, if possible. To hold it meaningless is to ascribe to Congress the doing of an idle and useless thing, and this we may not do. We have, on many occasions, reiterated the statement that it is the primary duty of courts to attempt to give effect, in their judicial acts, to the expressed and manifest intent of the legislative body. Courts and judges of our country may not too often remind themselves that they are not to make laws, but to construe them; that the question of what shall be contained within the statute is not a matter of their concern, but rather what the statutory meaning is and the scope, extent, and degree of its influence and control. We may not add to nor detract from the language used by the legislative body, when that might seem to be, for the particular matter being adjudicated, the more prudent, just, or wise course. The safety of our governmental institutions requires each of its great agencies, the legislative, executive, and judicial, to confine itself strictly to its own constitutional functions.

With these underlying principles in mind, we have uniformly held that a change of legislative language must be presumed to evidence an intent on the part of Congress to effect a change of meaning. *Fensterer & Voss* v. *United States,* 12 Ct. Cust. Appls. 105, T. D. 40029; *Lehn & Fink* v. *United States,* 12 Ct. Cust. Appls. 359, T. D. 40519, and cases therein cited. The only exceptions to this rule are found in the few instances where such changes of phraseology have been accompanied by other changes of language or statutory construction which plainly evince a congressional intent to make no change in meaning. *United States* v. *Wertheimer Bros.,* 2 Ct. Cust. Appls. 515; *United States* v. *Masson,* 3 Ct. Cust. Appls. 168; *Magee & Co.* v. *United States,* 4 Ct. Cust. Appls. 443.

Here the Congress omitted the word "preserved" in paragraph 1569. This change was for some purpose. The only reasonable explanation therefor is that Congress, being fully advised of our construction of the statutory language made in *Moscahlades Bros.* v. *United States, supra,* intended to meet that construction, obviate the difficulty concerning the meaning of the word "preserved," and

except all fish roe used for food purposes from the free list and make the same dutiable.

Our conclusion therefore is that the court below erred in holding the goods imported here to be free under said paragraph 1569.

The question then arises, If the goods are to be held as dutiable, how shall they be classified? The Government insists they should be held to be "fish roe for food purposes * * * packed in ice," under paragraph 721.

We are unable to concur in this conclusion. A more definite and exact meaning must be attached to the words "packed in ice" than the proof here justifies. The words used must be given their ordinary and common meaning. The · verb "pack" has been thus defined:

Pack, v. 1. To make a pack of; to arrange closely and securely in a pack; to put in a pack; hence, to place and arrange compactly as in a pack; to prepare and put up for preservation or transportation; as, to pack goods in a box; to pack meat, fruit, or fish. (Webster's New International Dictionary.)

Pack, v. To dispose with orderly arrangement in compact shape for convenience in carrying, keeping, or handling. To stow in any receptacle, as a box, barrel, or package; as to pack goods; to compress into a bundle to be carried on the back of a man or beast. (Funk & Wagnalls' Standard Dictionary.)

The noun "pack" has in like manner been similarly defined:

Pack, n. 1. A bundle prepared to be carried; * * *. (Webster's New International Dictionary.)

Pack, n. A bundle or a package tied, wrapped, or otherwise confined, as for carriage on the back of man or beast; a bale; as, a peddler's pack; * * *. (Funk & Wagnalls' Standard Dictionary.)

From these definitions it is obvious that a commodity can only be said to be "packed in ice" when it is arranged with ice in a compact and orderly bundle or package for handling, transportation, or preservation as a distinct and independent item of commerce. It follows that the classification under paragraph 721 can not be sustained.

There is no other *eo nomine* provision for fish eggs for food purposes in the Tariff Act of 1922. The goods imported in this case are therefore an unenumerated unmanufactured article, and must either be classified by similitude under paragraph 1460, or, that failing, under paragraph 1459, as an unmanufactured article not enumerated or provided for. *Isler & Guye* v. *United States,* 11 Ct. Cust. Appls. 340 (342). The similitude clause is not pleaded herein, but this is not essential. *Rice* v. *United States,* 10 Ct. Cust. Appls. 165, affirmed in 257 U. S. 536.

The Congress, in framing the language of paragraph 721, supra, used the language "fish roe for food purposes, packed in ice or frozen, prepared or preserved, by the addition of salt in any amount, or by other means." If it had been intended to include all fish roe for food purposes, simple and plain language to that effect would have

been sufficient. But the tariff rates of that paragraph were specifically restricted to certain kinds of fish roe, or that imported in a certain condition. Having thus excluded from the language used words which would have included the fish roe in question here, it will be assumed the Congress did not intend to include it within the scope thereof, but under some other provision.

In *Strauss* v. *United States*, 2 Ct. Cust. Appls. 203, this court had under consideration the similitude clause of the act of August 5, 1909. The pertinent language of that act was identical with that of paragraph 1460, which is as follows:

1460. That each and every imported article, not enumerated in this act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. If two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates.

In that case the court, through Smith, J., said:

It is true that the similitude clause can not be applied to articles which are the same as the enumerated article and which are identical with the latter in material. Such articles are the same and not of a similar kind. The similitude clause is intended to apply only to articles which are different and distinct from the enumerated article, and the duty specifically attached to an article by reason of an improved condition which does not change its essential characteristics can not be affixed by similitude to the same article when not in that condition. So shells washed and cleansed of dirt and animal matter are not *similar* to "shells engraved, cut, ornamented, or otherwise manufactured." *Schoenemann* v. *United States*, 119 Fed. 584, 586. Bisque wares are not *similar* to "bisque wares if painted, tinted, stained, enameled, printed, gilded, or otherwise decorated or ornamented in any manner." Fensterer & Ruhe (T. D. 31110).

We have no reason to depart from the doctrine there announced.

Testing the case at bar by the rule of law just quoted, we are unable to conclude that the goods imported here are classifiable under paragraph 721 by similitude. The court may properly take judicial notice that fresh fish roe for food purposes, in pails or containers, is the same in material, quality, texture, and use, as fresh fish roe packed in ice. The only difference is that Congress imposed a certain rate of duty upon it under paragraph 721 if it was packed in

ice, and failed to impose the same rate of duty upon it under that paragraph if it was not so packed in ice. The same material being involved and the only difference being one of packing, the claim for classification by similitude can not be allowed. Attention is called to the case of *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783, where we held frozen meat to be fresh meat, by similitude. The proof in that case clearly showed the frozen meat to be different from fresh meat, actually and commercially, but to be similar to it in material, qualities, and use; it was therefore properly classified by similitude as fresh meat. We have no such state of facts here.

It follows that the goods imported in this case should be classified under paragraph 1459 as raw or unmanufactured articles not enumerated or provided for, at 10 per centum ad valorem.

The judgment of the court below is reversed and the cause remanded with directions to reliquidate accordingly.

*Reversed* and *remanded*.