(C. D. 716)

Quong Lee & Co. et al. v. United States

## United States Customs Court, Third Division

(Decided December 30, 1942)

*Harper & Harper* (*Walter I. Carpeneti* and *Abraham Gottfried* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector, Richard F. Weeks*, and *Francis X. O'Donnell, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: These two suits against the United States were consolidated for trial. The merchandise involved consists of two commodities. One is water chestnuts classified by the collector as vegetables in their natural state and assessed at 50 per centum ad valorem under paragraph 774 of the Tariff Act of 1930. The plaintiffs claim they are free of duty as chestnuts under paragraph 1646, or dutiable at 35 per centum ad valorem under paragraph 775 as vegetables "if cut, sliced, or otherwise reduced in size" or "prepared or preserved in any other way and not specially provided for."

The other merchandise in dispute is described as "dried sweetmeat (kumquat)" on the invoice covered by protest 877826–G and as "honeyed fruits (kumquat)" on the invoice covered by protest 922735–G. The merchandise covered by both cases was classified as prepared or preserved fruits and assessed with duty at the rate of 35 per centum ad valorem under paragraph 752. The plaintiffs claim that the merchandise should be assessed at 1 cent per pound as oranges under paragraph 743.

The first witness called by the plaintiffs was Mr. Chin Buc Kee who is an importer in San Francisco handling both water chestnuts and kumquats. He testified that water chestnuts are grown around lakes and in the water; that to make them ready for shipment they take off the hulls and dry them; that he calls them "water chestnuts"; that he has seen kumquats growing on trees in China. On cross-examination, he testified that water chestnuts grow under the earth, in the ground or in the water and they have to be planted.

The next witness called by the plaintiffs was Mr. Dea Yow who is sales manager for Song Kee Co. of San Francisco. He testified that water chestnuts grow in the mud; that in the summer the stem is planted in the ground and they grow under the ground; that when they are harvested the stem and roots are cut off and they are washed and dried; that he buys them under the name of "water chestnuts." On cross-examination, he testified that they are different from the American chestnuts; that they have no shell and are like small potatoes.

The next witness called by the plaintiffs was Mr. Alfred Schrupp, a United States customs examiner at the port of San Francisco. He identified a sample of merchandise invoiced as "dried sweetmeat (kumquat)" and it was admitted in evidence and marked exhibit 1. On being asked to describe the difference between exhibit 1 and the merchandise invoiced as "honeyed fruit kumquat" he said "the honeyed fruit kumquats are similar to this merchandise in shape and color, but they are not sugared as these, but are prepared in a solution of sugar and possibly some honey." On cross-examination the witness testified that the kumquats were preserved.

The next witness called by the plaintiffs was Mr. George Henry Godfrey who is a United States customs examiner at the port of San Francisco. He produced a sample of the merchandise invoiced as water chestnuts and it was received in evidence and marked exhibit 2.

The case was then transferred to Los Angeles and Mr. Fred H. Howard was called as a witness for the plaintiffs. He testified that he is a nurseryman and horticulturist and had been familiar with oranges and kumquats for 40 years or more; that Chinese kumquats are a species of citrus, which is commonly known as orange. On cross-examination he testified that kumquats are grown on a tree; that he had seen them sold as fresh fruit and had seen them used as candied fruit, in Chinese preserves; that "they are citrus, citrus aurantica, specifically speaking." When asked on cross-examination if that is about as far as he would like to go in his testimony, he said:

A. That is the common name of citrus; generally speaking, they refer to them as oranges. Lemons, for instance, is citrus limonum.

\* \* \* \* \* \* \*

X Q. You draw a distinction, do you, between the citrus fruit, between those lemons and the citrus fruit which we know as oranges and the citrus fruit which we know as limes?—A. The scientific classification, yes, the scientific classification of all citrus fruit; and kumquats are one of the components of the citrus family.

\* \* \* \* \* \* \*

X Q. Tell us what are the different kinds of fruit that belong to the citrus family.—A. All of the various oranges, Valencias, navels; all of the lemons, kumquats, Mandarins, and all of the various types of oranges that are classified under Rutaceae botanically, as citrus. It is one great family.

\* \* \* \* \* \* \*

X Q. Now, do you classify a kumquat as a kumquat orange?—A. It is referred to as a kumquat, but it is an orange.

X Q. In the same sense that a tangarine is an orange?—A. Yes, sir.

\* \* \* \* \* \* \*

X Q. And are they known as oranges in this country?—A. Yes, sir.

X Q. These kumquats?—A. Yes, sir.

X Q. Are you speaking scientifically now?—A. Yes, sir.

\* \* \* \* \* \* \*

X Q. And in your experience commercially you find them called oranges?—A. Yes, sir.

The case was then transferred to San Francisco at which port the defendant called Miss Alice Eastwood who is a botanist. The witness testified that she was familiar with kumquats and also with oranges; that, from a botanical point of view, she distinguishes between oranges and kumquats; that a kumquat is not an orange botanically; that its botanical name is "fortunella"; that there are physical differences between a kumquat and an orange; that "I don't think it is an orange, botanically, in my opinion."

Q. Do you have any reasons on which you base that opinion?—A. Yes, I have. In the first place, it doesn't look like an orange. Botanically, it is entirely different. There is a difference in the flowers, in the ovaries; there is a difference in the fruits, which are all given by Mr. Walter T. Swingle in that article of his that he published.

The witness was asked if she was familiar with water chestnuts and she testified that "it is known as trapas nathans" and that "Nathans" means swimming; that she had not seen them growing; that a water chestnut is not in any way similar to the American chestnut. When asked how they differ, the witness said:

A. The American chestnut grows on a tree; the water chestnut grows in water. In the second place, the flowers are different. They belong to entirely different parts of the vegetable kingdom. There is no connection between them. The only reason they are connected at all is because they are both chestnuts. The water chestnuts are called "trapas"; at least, I think they call them that. Their name is more of an aborigines name.

Q. How do the two compare in taste and in appearance?—A. They don't taste alike; they are very different in their physical appearance. Anybody would think they are different. The water chestnut ripens in water; the American chestnut ripens on a tree.

When asked to describe the appearance of a water chestnut, the witness said "they look like a buffalo head with two horns sticking out."

On cross-examination, the witness testified that she had not seen kumquats growing; that her testimony concerning the kumquat is based entirely on a scientific or botanical basis; that she had never heard kumquats called oranges; that she studied about kumquats for the first time about 3 or 4 weeks prior to giving her testimony; that the tangerine is a citrus and the kumquat is a fortunella.

One of the questions involved in regard to the water chestnuts, since no testimony as to commercial nomenclature was introduced, is whether or not the articles are chestnuts within the common meaning of that term. The following definitions, which appear in Webster's New International Dictionary, 1933 edition, are enlightening:

chestnut. 1. The sweet edible nut produced by any species of Castanea (which see); also, the tree bearing this nut; esp., the European chestnut C. sativa or the closely related American species C. dentata. The Japanese chestnut (C. crenata) differs in having larger fruit.

*castanea. Bot.* A small genus of fagaceous trees or shrubs, the chestnuts, natives of temperate regions. They are distinguished from the oaks (*Quercus*) by the prickly involucre surrounding the nuts.

*nut.* 1. A hard-shelled dry fruit or seed having a more or less distinct separable rind or shell and interior kernel or meat; also, the kernel or meat itself; loosely used, and including many kinds, as almonds, peanuts, Brazil nuts, etc., not botanically true nuts.

*water chestnut.* a. Any plant of the genus *Trapa*, esp. *T. natans* and *T. Bircornis*; also their edible, nutlike, spiny-angled fruit. See Trapa. b. A Chinese sedge (*Eleocharis tuberosa*) or its edible tuber.

*Trapa. Bot.* A small genus of Old World aquatic plants constituting the family Trapaceae (order Myrtales). They are herbs having the submerged leaves finely dissected and the floating leaves rhombic, with inflated spongy petioles. The solitary white flowers are followed by nutlike horned or spiny fruits, whence they are known as *water caltrops. T. natans* is the water chestnut.

A more comprehensive definition of water chestnuts is given in The New International Encyclopaedia, second edition, as follows:

*water chestnut.* The edible seeds of the *Trapa natans*, a European and Asiatic species found in a few localities in the United States, called by the French *marron d'eau*. In China the fruit of *Trapa bispinosa*, known as *ling ko*, is common, it having been included among the five food grains of China. The seeds do not keep well, and those offered in bazars are often decayed. The fresh nuts resemble chestnuts in taste. The name "water chestnut" is also given to the edible tubers of the *Eleocharis tuberosus*, a plant of the family Cyperaceae, which is cultivated by the Chinese in tanks very abundantly supplied with manure. It is destitute of leaves, except a slender short sheath or two at the base of each culm. The tubers are produced on stolons. They are esteemed by the Chinese for food.

It is evident from an examination of the authorities that there are two kinds of water chestnuts, one a plant of the genus *Trapa* or the nut which grows thereon and the other a sedge (*Eleocharis tuberosa*) or its edible tuber. Defendant's witness Alice Eastwood, who had never seen the articles growing, referred only to the variety *Trapa natans*, stating that they "look like a buffalo head with two horns sticking out." The record does not show that the witness was shown the samples in exhibit 2 which represent the water chestnuts in this case. These samples, having been in the files of the court for more than 4 years, are dried and shriveled but it is apparent from an examination of them that they have no horns. There is a picture of water chestnuts in connection with the definition of "Trapa" in Webster's New International Dictionary which appears to be like the water chestnuts described by the witness.

The plaintiffs' witnesses Chin Buc Kee and Dea Yow had seen water chestnuts like those in this case growing in China. They testified that they plant the stem in the mud around lakes and they grow underground in the water; that when they are harvested the stem and roots are cut off and the tuber is washed and dried. One of them testified that they look like small potatoes and have no shell. These witnesses evidently described the tuber of the sedge *Eleocharis tuberosa*,

the tuber of which is edible. Since they have no shell, it is evident that they are not nuts. One witness testified that *he* called them water chestnuts and the other stated that he bought them under that name.

One question involved in this case is whether the water chestnuts are chestnuts within the common meaning of that term. That question was decided by this court in *Yee Sing & Co.* v. *United States,* 72 Treas. Dec. 41, T. D. 49060, adversely to the plaintiffs' contention where the same kind of water chestnuts were involved. The record in this case is not sufficient to warrant a different conclusion and the claim under paragraph 1646 is therefore overruled.

Another question for decision is whether or not the imported water chestnuts are dutiable at 50 per centum ad valorem under paragraph 774 as vegetables in their natural state or at 35 per centum ad valorem under the following provision in paragraph 775.

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; * * *.

Witness Chin Buc Kee, when asked what is done to the water chestnuts in order to make them ready for shipment, testified that "they take them up and take off the hulls, and dry them" and witness Dea Yow, when asked a similar question, stated that "they cut the stem off, and the roots off, and wash it and just dry it." The first question appears to be, are these water chestnuts reduced in size? The treatment of the merchandise in this case is analogous to the treatment shown to have been administered to the endives in the case of *United States* v. *The Hothouse Products Corp., Quinn & Werner,* 21 C. C. P. A. 261, T. D. 46789, except that the endives were reduced in size more than the water chestnut tubers because their outer leaves were cut off, leaving only the heart of the plant. The court said:

The question before us for determination is the meaning to be ascribed to the words "reduced in size" as used in said paragraph 775. We are of the opinion that Congress did not intend by this language that all vegetables reduced in size from the condition in which they are taken from the ground should be classified under said paragraph 775. To so hold would exclude many vegetables, like cabbage and celery, from classification as "vegetables in their natural state" under paragraph 774, if decayed leaves of the cabbage were removed or the root of the celery stalk were severed.

* * * * * * *

It is our opinion that when Congress used the words "reduced in size," it contemplated, with reference to vegetables of this character, a reduction in size beyond the point that such vegetables are ordinarily reduced in size as an incident of placing them in a marketable condition. In other words, if endives, as grown in this country and abroad, are not usually sold or dealt in without removing a part of the leaves, then with such leaves removed they are in their natural state and not reduced in size in a tariff sense.

If endives are not reduced in size within a tariff sense, certainly water chestnuts are not because all that appears to have been done to them is to cut off the roots and tops and thus get the edible portions by themselves.

The next question presented is whether or not the water chestnuts are "prepared or preserved" within the meaning of that description in paragraph 775. In support of the contention that they are prepared or preserved, the plaintiffs cite *Quong Yu Wo* v. *United States*, 68 Treas. Dec. 668, T. D. 48003, and *Sun Kwong On Co.* v. *United States*, 66 Treas. Dec. 991, Abstract 29022, in which cases dried fungus and dried lily flowers were held to be vegetables, prepared or preserved. In those cases the court held that drying was a method of preservation, following *United States* v. *Kagawa & Co.*, 5 Ct. Cust. Appls. 388, T. D. 34934; *F. H. Shallus & Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 332, T. D. 44585; and *United States* v. *Enbun Co.*, 19 C. C. P. A. (Customs) 79, T. D. 45224.

It is well-settled that drying is a method of preservation but the difficulty with plaintiffs' contention is that the witnesses did not describe the method of drying or show that the water chestnuts were not imported in a fresh state. They may have been dried just as potatoes are dried in the field after digging or as corn is dried in the shock after cutting. Such a drying would not transpose fresh dug potatoes or newly cut corn into prepared or preserved potatoes or corn. In the absence of testimony showing that the water chestnuts herein involved were dried for the purpose of preservation, we must overrule the claim that they come within the provision for "vegetables * * * prepared or preserved."

In the case of *S. Y. Tank & Co. et al.* v. *United States*, 11 Treas. Dec. 82, T. D. 27019, G. A. 6266, one of the articles considered by the court was water chestnuts known as *Eleocharis tuberosa* which had been classified as vegetables in their natural state under paragraph 257 of the Tariff Act of 1897. The same issue was not involved in that case, however, as the only claim before the court was whether or not they were "vegetable substances, crude or unmanufactured" free of duty under paragraph 617 which was overruled.

As to the preserved kumquats, the plaintiffs' claim that, under the ruling in *Nozaki Bros.* v. *United States*, 68 Treas. Dec. 1091, Abstract 32355, and *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464, the merchandise should be held dutiable under the provision for oranges at 1 cent per pound under paragraph 743.

In *Nootka Packing Co. et al.* v. *United States*, *supra*, the court held that clam meat, washed and cut into small pieces, and then canned in brine, was dutiable under the provision for "Clams, clam juice, or either in combination with other substances packed in air-tight con-

tainers" in paragraph 721 of the Tariff Act of 1930 rather than under the provision for "shellfish * * * prepared or preserved in any manner" in paragraph 1761. In *Nozaki Bros.* v. *United States, supra,* the court held that peeled mandarin oranges, broken into segments and packed with sirup in cans, were dutiable at 1 cent per pound as oranges under paragraph 743 of the Tariff Act of 1930 rather than at 35 per centum ad valorem as "fruits * * * prepared or preserved" under paragraph 752. A subsequent decision on the same subject was rendered in *Nozaki Bros. et al.* v. *United States,* 71 Treas. Dec. 790, T. D. 48974.

The decisions in the above-cited cases were based on the well-settled principle of construction to the effect that "where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears." This is a construction which has long been adhered to by the courts. See authorities cited in *Nootka Packing Co. et al.* v. *United States, supra,* and in *Brown & Co.* v. *United States,* 6 Ct. Cust. Appls. 415, T. D. 35977.

The kumquats in the instant case are preserved whole by being either coated with sugar, as in exhibit 1, or packed in sugar and honey in tins. The same provisions of law considered in the *Nozaki Bros.* cases, *supra,* are involved herein, the pertinent parts thereof reading as follows:

PAR. 743. * * *; oranges, 1 cent per pound; * * *.

PAR. 752. Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, * * * 35 per centum ad valorem; * * *.

It is evident from a review of the decisions that, if kumquats are oranges, the merchandise herein involved should be classified under paragraph 743.

In the *Nozaki Bros.* cases, *supra,* it was stipulated that mandarin oranges were oranges but in this case the defendant contends that kumquats are not oranges. The plaintiffs' witness Howard, who is a grower of oranges and has grown kumquats, testified that kumquats are oranges while defendant's witness Alice Eastwood, who is a botanist, testified that they are not, but her testimony was based on a botanical standpoint.

Counsel for the plaintiffs argues in his brief that the testimony of the defendant's witness is not controlling because she was testifying with respect to the scientific meaning only, and, where the common meaning differs from the scientific meaning, the former controls, citing *United States* v. *Two Hundred Chests of Tea,* 9 Wheat. 189, 6 L. Ed. 128; *American Felsol Co. et al.* v. *United States,* 25 C. C. P. A. (Customs) 367, T. D. 49454; *Bakelite Corporation et al.* v. *United States,* 16 Ct. Cust. Appls. 378, T. D. 43117. In the latter case, the court said:

The word [product], as used in the statute, must be given its ordinary meaning, no commercial designation being attempted to be shown. If the testimony of the witnesses for the importers may be construed as simply expressing their interpretation of the statute, then such testimony is immaterial; if their statements may be taken as an attempted statement of the scientific meaning of the word "products," it is sufficient to note that tariff acts are drafted, "not in the terms of science, but in the language of commerce, which is presumptively that in common use." *Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436.

Testimony as to the common meaning of a tariff term is admissible in court but the court is not bound by it and may consult dictionaries, lexicons, and other written authorities. *United States* v. *Moscini*, 19 C. C. P. A. (Customs) 144, T. D. 45261; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219.

The definitions in the dictionaries and encyclopedias which bear on the issue herein involved seem to support the testimony of plaintiffs' witness Howard as to the common meaning of the word "orange." In Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition, the word is defined as follows:

*orange, n.* (1) The large round or roundish fruit (technically a berry) of *Citrus aurantium*, with a reddish-yellow and leathery rind enclosing about 10 membranous divisions, each division usually containing 2 or 3 seeds in a refreshing sweetish or subacid pulp. Favorite varieties for cultivation are the mandarin of China, the navel orange of California, the tangerine—a mandarin type—grown in Florida, and the Oriental kumquat.

Kumquat is defined in The New International Encyclopaedia, second edition, as follows:

*kumquat.* \* \* \* (Cant. pron. of Chin, *kin keu*, golden orange), *Citrus japonica*. Small shrubby forms of the orange, seldom more than 6 feet high, natives of Cochin-China or China, and extensively cultivated in Japan, Florida, and California. They endure more frost than any other oranges and in cultivation grow 8 to 12 feet tall. The fruit is ovate, oblong, or spherical, and orange-colored. The rind of the kumquat is sweet and the juice acid. It is delicious and refreshing. The Chinese make an excellent sweetmeat by preserving it in sugar, a practice which is being followed in the United States. The dwarf habit and the dense dark-green foliage make it popular for pot culture. In commercial plantations it is usually budded or grafted on *Poncirus trifoliata* or some sweet orange stock. For illustration, see Colored Plate of Citrus Fruit. Consult Hume, "The Kumquat," in *Florida Experiment Station, Bulletin* 65 (Lake City 1903); Swingle, "A New Genus of Kumquat Oranges," in *Jour. Wash. Acad. Sci.*, 5 (1915), No. 5, pp. 165–176. The kumquats have recently been grouped by one authority into a new genus, *Fortunella*. The round form is classed as *Fortunella japonica*, and the oval form as *Fortunella margarita*.

The word is defined in Encyclopaedia Britannica, fourteenth edition, as follows:

*kumquat*, the group name of several shrubs of the genus *Fortunella* (family Rutaceae), closely allied to the orange and lemon, and formally placed under *Citrus japonica*. Natives of eastern Asia, these small trees are now widely cultivated throughout the Tropics; they grow 8 to 12 ft. high, the branches sometimes bearing small thorns, with dark green, glossy leaves and pure white orange-like flowers standing singly or clustered in the leaf-axils. The bright orange-

yellow fruit is round or ellipsoidal, about 1 in. in diameter, with a thick minutely tuberculate rind, the inner lining of which is sweet, and a watery acidulous pulp. The kumquat has long been cultivated in China and Japan, and was introduced into Europe in 1846 by Robert Fortune, collector for the London Horticultural Society, and shortly after into North America. It is much hardier than most plants of the orange tribe, and succeeds well when grafted on trifoliate orange, *Citrus trifoliata*. It is largely used by the Chinese as a sweetmeat preserved in sugar.

We have examined other definitions of the words "orange" and "kumquat" and do not find that the statements in the definitions above set forth are disputed. It is significant that in the definition, in Funk & Wagnalls New Standard Dictionary of the English Language, kumquats are described as one of the varieties of the orange, and, in the definition of kumquat quoted from The New International Encyclopaedia, reference is made to an article written by Mr. Swingle entitled "A New Genus of Kumquat Oranges." Mr. Swingle is evidently the authority upon which witness Alice Eastwood relied when she testified that botanically kumquats are not oranges.

We are of opinion that kumquats are one of the varieties of oranges within the common meaning of that term, as testified by witness Howard, and, in harmony with the decisions in the *Nozaki Bros.* cases, *supra*, we hold that the kumquats in this case, both those preserved in sugar and those in sugar and honey, are dutiable at 1 cent per pound under paragraph 743 as claimed by the plaintiffs. As to said merchandise, judgment will be entered in favor of the plaintiffs.

The claims with respect to the water chestnuts are all overruled.