F. F. G. Harper & Co., Inc., B. R. Anderson & Co. *v*. United States
(No. 4196)[1]

United States Court of Customs and Patent Appeals, April 10, 1939

*Lawrence A. Harper, Walden & Webster* (*Edward F. Jordan* of counsel) for appellants.

*Webster J. Oliver,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument February 10, 1939, by Mr. Jordan and Mr. Lawrence]

Before Garrett, Presiding Judge, and Bland, Hatfield, Lenroot, and Jackson, Associate Judges

Jackson, Judge, delivered the opinion of the court:

The importers, appellants herein, brought suit against the United States to recover certain sums of money claimed to have been unlawfully exacted by the Collector of Customs, one at the port of San Francisco and the other at the port of Seattle. The plaintiff in San Francisco was F. F. G. Harper & Co., and the plaintiff in Seattle was B. R. Anderson & Co.

The merchandise involved consisted of so-called whole flake egg and flake egg yolk which had been dried in China and after drying kept at freezing temperatures until it reached the ultimate consumer.

[1] C. A. D. 53.

The San Francisco entry was made under the Tariff Act of 1922 and the Seattle entry under the Tariff Act of 1930. The collectors classified the merchandise at 18 cents per pound as "dried whole eggs" and "dried egg yolks" under paragraph 713 of the respective tariff acts.

By consent the suits were consolidated and tried in the cities of Los Angeles and San Francisco. The record consists of oral testimony on behalf of the parties together with the printed record in *F. F. G. Harper & Co. v. United States*, 23 C. C. P. A. (Customs) 177, T. D. 48027, which was received in evidence without objection.

The appellants relied upon the claim that the merchandise should have been classified under corresponding provisions of the said paragraphs as "whole eggs, egg yolk, * * * frozen or otherwise prepared or preserved, and not specially provided for" dutiable under the Tariff Act of 1922 at 6 cents per pound and at 11 cents per pound under the Tariff Act of 1930.

The United States Customs Court, Third Division, rendered judgment against the plaintiffs, holding that the importations had been properly classified by the respective collectors, as above stated. From the said judgment this appeal was taken.

The paragraphs referred to are as follows:

PAR. 713 [Tariff Act of 1922]. Eggs of poultry, in the shell, 8 cents per dozen; whole eggs, egg yolk, and egg albumen, frozen or otherwise prepared or preserved, and not specially provided for, 6 cents per pound; dried whole eggs, dried egg yolk, and dried egg albumen, 18 cents per pound.

PAR. 713 [Tariff Act of 1930]. Eggs of poultry, in the shell, 10 cents per dozen; whole eggs, egg yolk, and egg albumen, frozen or otherwise prepared or preserved, and not specially provided for, whether or not sugar or other material is added, 11 cents per pound; dried whole eggs, dried egg yolk, and dried egg albumen, whether or not sugar or other material is added, 18 cents per pound.

The merchandise in the *Harper* case, *supra*, consisted of flake egg yolk and apparently is similar in all respects to the flake egg yolk involved in the instant appeal. The United States Customs Court, Third Division, gave judgment against the importer in that case and held the goods to be dried egg yolk as classified by the collector within the meaning of paragraph 713 of the Tariff Act of 1922. The judgment of the trial court was affirmed by this court.

Appellants, in the court below, stated that these cases are a relitigation of the same issue as that involved in the *Harper* case, *supra*, counsel giving the following reason for the further litigation:

The importers are relitigating this issue because of two things. The first is that in its opinion the Appellate Court held that the record before it did not show how the products involved were manufactured. The second is that the Appellate Court also held that the record did not show that it was essential to keep these products under cold storage conditions. Because of these holdings the Appellate Court did not pass upon the question of law that importers sought

to raise, which was whether an article had to be preserved by drying to be "dried" within the tariff sense.

From the foregoing statement it is clear that the only issue which the appellants seek to have adjudicated is the question of law as to whether an article must be preserved by drying to be "dried" in a tariff sense.

The imported merchandise, in the words of one of appellant's witnesses, is produced as follows:

In the case of the flake whole egg: the egg meat is broken from the shell, the yolks of the eggs are ruptured to be in liquid form and the whites and yolks are stirred together; the resulting meat of the whole egg is dehydrated on a long tin belt revolving around two large drums within an air duct through which washed and heated air is forced; the dehydrated meat of the whole egg is then "screened" to be in flakes of more or less uniform size.

In the case of flake egg yolk: the process is the same except that the raw material consists of only the ruptured yolks of the eggs, the yolks having first been "separated" from the whites by hand (in much the same way as the housewife does it).

After the eggs have been prepared, as above stated, the record shows that they must be kept in freezing temperatures so that they may not spoil and become useless for any purpose.

The reason for dehydrating the egg products is to save expenses and charges on the water content of the egg meat and to assure that "the dehydrated product will contain all the desirable properties, when 'reconstituted' in water, which the liquid egg meat originally possessed."

It is apparent from this evidence, which is not contradicted, that the moisture is removed from the egg meats by a process of dehydration. This indicates that they go through a drying process and have been dried. The merchandise was invoiced and entered as "dried whole egg" and "dried egg yolk" and was so labeled on the containers.

We have no doubt but that the articles are dried whole eggs and dried egg yolk as commonly understood, regardless of the fact that they must be kept in a very low temperature to be preserved in the condition as manufactured. The contention of appellants seeks to narrow the meaning of the term "dried" from its ordinary meaning and would have us hold that in a tariff sense it can only be applied to articles which have been preserved by drying. That drying is a means for preserving animal and vegetable products is of course true and it has been so held by this court. *Levy & Levis Co.* v. *United States*, 5 Ct. Cust. Appls. 89, T. D. 34130; *United States* v. *Kagawa & Co. et al.*, 5 Ct. Cust. Appls. 388, T. D. 34934; *E. H. Shallus & Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 332, T. D. 44585; *United States* v. *Enbun Co.*, 19 C. C. P. A. (Customs) 79, T. D. 45224.

We cannot agree with appellants that any of the cited cases go to the extent of holding either directly or inferentially that all animal and vegetable products which are dried are preserved by drying.

There is no question of commercial designation involved herein and, in our opinion, the pertinent paragraphs of the said tariff acts must, therefore, be construed according to their ordinary meaning.

It will be observed that paragraph 713 of each of the said tariff acts provides for "dried whole eggs, dried egg yolk and dried egg albumen," without limitation. In our opinion, therefore, the form of the merchandise whether it be powder or flake or the condition in which the egg meats must be kept is entirely immaterial, when, as the evidence discloses here, the articles have been subjected to a drying process. See *United States* v. *General Hide & Skin Corp.*, 11 Ct. Cust. Appls. 78, 81, where the court said:

It has been repeatedly held that where an article is designated without words of limitation, that designation will generally include the article in all its forms known to commerce.—*Brown & Co.* v. *United States* (6 Ct. Cust. Appls. 415; T. D. 35977); *Neuman* v. *United States* (4 Ct. Cust. Appls. 64; T. D. 33310); *Chew Hing Lung* v. *Wise* (176 U. S., 156).

Cf. *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464.

In view of what has been said we do not think that the facts in the instant case are sufficient to distinguish it materially from the case of *F. F. G. Harper & Co.* v. *United States, supra,* and accordingly the judgment of the United States Customs Court is *affirmed.*