(C. D. 1230)

WALKER SERVICES *v.* UNITED STATES

## United States Customs Court, First Division

(Decided April 6, 1950)

*Henry L. Ziegel* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General, (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: A shipment of merchandise, invoiced as "Tinted wool flocks (100% wool)," was exported from Toronto, Canada, and entered at the port of Boston, Mass., where it was classified as wool waste, not specially provided for, under a provision for such merchandise in paragraph 1105 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1105), as amended by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, wherein the said amended paragraph is set forth in the following form:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1105 (a) and (b) | Wool and hair wastes: | |
| | Top waste, slubbing waste, roving waste, and ring waste | 28¢ per lb. |
| | Garnetted waste | 14½¢ per lb. |
| | Noils, carbonized | 17¢ per lb. |
| | Noils, not carbonized | 12¢ per lb. |
| | Thread or yarn waste | 11½¢ per lb. |
| | Card or burr waste, carbonized | 14½¢ per lb. |
| | Card or burr waste, not carbonized | 10½¢ per lb. |
| | Wool wastes not specially provided for | 10½¢ per lb. |
| | Shoddy, and wool extract | 14¢ per lb. |
| | Mungo | 9¢ per lb. |
| | Wool rags | 9¢ per lb. |
| | Flocks | 3½¢ per lb. |

Plaintiff claims that the merchandise is classifiable either as waste, not specially provided for, under paragraph 1555 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1555), as amended by T. D. 51802, *supra,* and therefore dutiable at 7½ per centum ad valorem, or under the *eo nomine* provision for "flocks" in amended paragraph 1105, *supra,* carrying a duty of 3½ cents per pound.

The case was heard and submitted before a single member of this court on circuit, under statutory authorization issued by the chief judge to hear or to hear and determine the case, 28 U. S. C. (1948 revision) § 254, as amended by Public Law 72, 81st Cong., 1st sess.,

sec. 66 (formerly section 518 of the Tariff Act of 1930, 28 U. S. C. 1946 ed. § 296). My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case somewhat similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my position in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am preparing this opinion and participating in the judgment attached thereto.

All of the proof, oral testimony as well as illustrative samples, were introduced by plaintiff. Defendant offered nothing in rebuttal. It discloses that the commodity (plaintiff's exhibit 1) is a sheepskin flock, a byproduct of tanneries in Quebec and Ontario, which was shipped by the Canadian exporter from Toronto. It was recognized as being substantially the same as the domestic sheepskin flock (plaintiff's exhibit 2) purchased from processors of sheepskins in this country.

The merchandise is a waste or refuse obtained from sheared sheepskins. When the raw skins are received in the tannery, they contain oil, grease, and dirt. To remove such impurities, the skins are washed, pickled, tanned, dried, stretched, and the fleshing is removed to induce pliability. To make them available for their ultimate uses, i. e., in the manufacture of mouton skins, boys' coats, aviators' jackets and boots, vests, slippers, gloves, powder puffs, polishers, and linings for toys, the skins are subjected to a series of shearing operations, through which the pile is brought to a uniform length of approximately three-eighths of an inch. The byproduct of each shearing is known as a flock.

A conglomerate mass removed from sheepskins during several shearing processes, incapable of use for spinning purposes because of the shortness of the fibers and the presence of foreign matter, particularly skin bits, describes the merchandise. In its imported condition, it is used for stuffing toys, batting for upholstery, making wall paper and roofing products, and as filler for comforters and quilts.

Part of the shipment was used by the importer; the remainder was sold to dealers. The importer used all of its quantity as an adulterant in wool blends, combining the imported product with better grades of waste, like lap, top, yarn, and thread wastes, and then running the entire collection through a garnetting machine that mixes the fibers into a material suitable for spinning into yarn. Before it can be used in that manner, the merchandise in question must be processed for removal of the skin bits to give it spinning properties when ultimately

garnetted with the spinnable fibers. It is known by several names. In addition to "clippings," "shavings," and "shearings," the commodity is also designated as flocks. When the term "flocks" is applied, it is always preceded by a descriptive word so that the complete designation may be "sheepskin flocks," "tannery flocks," "shearing flocks," "tanner's shear flocks," "shear flocks," or "tanner's shearing flocks." The use of a descriptive word follows the common practice for designating, as a means of exact identification, all of the several kinds of flocks.

Our consideration will be directed to the claim for classification as "flocks" for if the product in question is included therein then obviously it is more specifically provided for under that *eo nomine* designation than within either of the "waste" provisions hereinabove referred to.

The record shows that the common characteristics of all flocks are the shortness of the fibers and the clearness of the material. None is capable of being spun commercially. The principal or most well-known flocks are the napper (plaintiff's exhibit 3 and illustrative exhibit 8), the shear (plaintiff's exhibit 4), the teasel (plaintiff's exhibit 5), and the fulling mill flocks. All of those flocks are acquired from wool which has been either woven or knitted into a fabric. They are the result of raising and shearing processes. The napper flock comes from pieces of cloth; the shear flock from blankets; and the teasel flock from various woven fabrics.

The present merchandise is somewhat comparable to the flocks named in the preceding paragraph as to the average length of fiber, although a little shorter. It is distinguishable therefrom in its source, and it is based upon such a distinction that defendant claims the provision for "flocks" has no application herein. Government counsel, in their brief, argue the point this way:

Thus, in the case at bar, the imported merchandise resembles to a great extent flocks, but it is not flocks because flocks is a particular kind of wool waste produced in a particular manner in the process of manufacturing woolen fabrics.

The merchandise at bar is also a wool waste but it is not a by-product in the manufacture of woolen fabrics but is merely clipped from a sheepskin. It is raw wool never having been processed at all except cleaned or washed on the skin.

Nowhere, in any of the literature on wool, is it suggested that flocks are short fibers of wool clipped from a sheepskin.

The "literature" quoted in defendant's brief is taken from two official publications, i. e., a pamphlet (No. F. L. 40) issued by the United States Tariff Commission, and the Summary of Tariff Information, 1929, both of which are also cited in plaintiff's brief as supporting its contention.

The pamphlet, which was released in 1926, is "one of a series of

Tariff Information Surveys," prepared under statutory authority, section 318 (a) (3) of the Tariff Act of 1922, directing the Tariff Commission to "select and describe articles which are representative of the classes or kinds of articles imported into the United States and which are similar to or comparable with articles of the United States." The publication is titled "WOOL BY-PRODUCTS AND WOOL WASTES," and includes two short paragraphs about flocks, recognizing that "among *the several kinds of flocks* are napper, shear, and fulling mill flocks." [Italics added.]

The Summary of Tariff Information, 1929, was compiled by the United States Tariff Commission for use of the Committee on Ways and Means in its consideration of adjustments in the Tariff Act of 1922, and refers to flocks as a product, consisting of short fibers resembling pulverized wool, obtained from shearing processes, unfit for spinning, and having some use in giving body and weight to cheap fabrics, but more largely employed in the manufacture of felts and embossed wall papers, and for the stuffing of toys.

Both of the publications referred to might be considered within the category of official releases used as aids in judicial interpretation of statutory language, particularly toward clarifying ambiguous words or phrases. Whatever value they may have, the tendency is toward supporting plaintiff's position.

No contention is made along the line of commercial designation. In fact, the record will not permit application of that principle. The common meaning warrants discussion.

Funk & Wagnalls New Standard Dictionary defines "flock" as: "1. Finely ground wool, cloth, rags, felt, or vegetable fiber, used for coating wall-paper; wool-dust. * * * 2. A tuft of wool or the like; a lock. 3. Short refuse wool."

The Encyclopaedia Britannica includes this definition: "Flock. * * * 2. * * * a tuft of wool, cotton, or similar substance. The name 'flock' is given to a material formed of wool or cotton refuse, or of shreds of old woollen or cotton rags, torn by a machine known as a 'devil.' This material is used for stuffing mattresses or pillows, and also in upholstery. The name is also applied to a special kind of wall-paper, which has an appearance almost like cloth, or, in the more expensive kinds, of velvet."

In observing the quoted definitions, the absence therefrom of any reference to the source of material identified as flock, is significant. Such omission affects seriously defendant's contention, as stated in counsel's brief, that flocks are "the by-product of specific treatment in the manufacture of woolen fabrics."

The statutory term "flocks" is to be given broad judicial interpretation. Such a construction was emphasized in *United States* v.

*Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886, which arose under the Tariff Act of 1922 and was decided in November 1926. There, the merchandise consisted of wool ground into powder and used in the making of wall paper. It had been classified by the collector as a manufacture of wool under paragraph 1119 of the Tariff Act of 1922, and claimed by the importer to come within the *eo nomine* designation for "flocks" in paragraph 1105 of the Tariff Act of 1922. Arguing to support the collector's classification, the Government contended that the product should be classified as flocks because it was not within the class of articles included among the named wools in said paragraph 1105, which, for the purposes of the present discussion, can be regarded as the same as paragraph 1105, as amended, *supra*, invoked herein by plaintiff. Disagreeing with the Government's theory, the appellate court held that "flocks" is a specific term, used by Congress without any limitation or restriction, and, extending its wide interpretation, stated further that "it makes no difference what flocks are used for as long as they are flocks. The future may develop other uses for flocks, and, notwithstanding this fact, they would still be flocks and covered by the specific provision of paragraph 1105."

Knowledge of the cited decision is imputed to Congress, so when, in the subsequent Tariff Act of 1930, the *eo nomine* designation was enacted in the same form, without any words of qualification or limitation, the action carried the effect of legislative sanction of the broad interpretation of the term "flocks" announced in the *Imperial Wall Paper Co.* case, *supra*. *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022. It is not necessary that similar merchandise must be present in the later case to invoke the rule of legislative ratification of statutory construction. If the statute judicially construed "is thereafter reenacted without change, it is presumed that Congress was aware of such judicial construction and approved the same," *Quong Yuen Shing Co.* v. *United States*, 31 C. C. P. A. 43, C. A. D. 247.

Plaintiff's uncontradicted testimony shows that the commodity in question is short refuse wool whose general characteristics and variety of uses are those of "flocks," within the common meaning thereof, and, under the cited judicial authorities, the product is classifiable under the specific provision for "flocks" in paragraph 1105, as amended, *supra*, dutiable at 3½ cents per pound, as alleged by plaintiff.

That claim in the protest is therefore sustained and judgment will be rendered accordingly.

Our conclusion makes it unnecessary to discuss the phase of the case relating to plaintiff's claim for classification as waste, not specially provided for.