(C. D. 1584)

JOHN J. BRUNNER AGENCY, INC.
ROHNER, GEHRIG & Co., INC. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 3, 1954)

*Strauss & Hedges* (*James F. Donnelly* and *Harry A. LeBien* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This is a protest against the collector's assessment of duty on merchandise invoiced as "pulpa naranja amarga" (bitter orange pulp) at 35 per centum ad valorem under paragraph 752 of the Tariff Act of 1930 as fruit pulp. It is claimed that the merchandise is properly dutiable at 1 cent per pound under paragraph 743 as oranges, or at 20 per centum ad valorem under paragraph 1558 as an unenumerated manufactured article.

The pertinent provisions of the tariff act are as follows:

PAR. 743. * * * oranges, 1 cent per pound; * * * .

PAR. 752. * * * fruit pastes and fruit pulps, 35 per centum ad valorem; * * * .

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

José Marín, manager and technical director of Conservas Trigo, S. A., manufacturer of the imported merchandise, testified by deposition that the only ingredients used in the making of the products were oranges minus seeds and that no brine or pickling agents were used. He described the process of preparation as follows:

The oranges are washed, cut in halves, and the skin separated from the pulp. The skins are cut in fine strips. Both are boiled separately. Degree of boiling depends upon the variety and stage of ripeness of the oranges. Finally, the pulp and skin-strips are mixed, canned, and sealed and sterilized.

Leo M. Abrahams, manufacturer of jam, jelly, and marmalade for 35 years under the firm name of General Preserve Co., Inc., testified for the defendant as follows: His firm is considered in the trade as one of the large manufacturers of preserves, jelly, and marmalade and employs 75 to 100 people. He is also president of the National Preservers' Association, which represents about 85 per centum of the production of all jam, jelly, and marmalade throughout the country. His firm has purchased merchandise produced by Conservas Trigo from John J. Brunner Agency, Inc. (the importer herein) for many years, including 1929, 1930, and 1931. He designates such merchandise as bitter orange pulp and uses around a quarter million pounds a year in the production of bitter orange marmalade. From his experience as a manufacturer and as president of the National Preservers' Association, he is familiar with the manner in which this merchandise is handled in the United States and stated that it is known as bitter orange pulp.

A label with the words "Bitter Orange Pulp," taken from a can purchased from John J. Brunner Agency, Inc., containing merchandise identical to that involved herein, was introduced into evidence as defendant's exhibit A.

A portion of the contents of a can of that label, which Mr. Abrahams stated was bitter orange pulp manufactured by Conservas Trigo and purchased from John J. Brunner Agency, Inc., was received in evidence as defendant's exhibit B. It appears to consist of the inside portion of the orange in a moist, soft condition and thin strips of orange peel. Mr. Abrahams stated that there was a lot of peel in the jar and that the balance of the contents was called the pith or the soluble solid of the orange.

Mr. Abrahams testified that he became president of the National Preservers' Association in 1952, had been vice president for 3 years prior to that, and had also been chairman of various committees. In those capacities, he had visited about 40 or 50 preserving plants throughout the country. He mentioned specifically plants located in Seattle, Wash.; Portland, Oreg.; San Francisco and Los Angeles, Calif.; Minneapolis, Minn.; Jacksonville, Fla.; Chicago, Ill.; and Malden, Mass. Based upon his knowledge and experience, he stated that the involved merchandise is known by everybody in the trade as bitter orange pulp.

On cross-examination, the witness stated that he had traveled extensively throughout the country in 1929, 1930, and 1931 not only to sell but to buy fruit. However, at that time, merchandise similar to that involved herein was not produced domestically but was imported from Spain or Morocco. He had never witnessed the method of manufacture of this product abroad but believed the commodity was similar to one now produced in California. The witness said that he had started purchasing this type of merchandise when he went into business in 1916 or 1917 and has used it since then to make bitter orange marmalade. That is almost its exclusive use.

Mr. Abrahams stated that, in his opinion, fruit pulp is fruit that has been partly macerated. Counsel for the plaintiffs read to him the following definition of "pulp" from Webster's New International Dictionary:

The soft, succulent part of any fruit; as the pulp of a grape, orange, etc.

The witness stated first that that would be called "purée" in the trade but then agreed that it defined pulp. He was asked whether he would call the portion of the instant merchandise, excluding the skins, pulp, and he replied:

From your definition that you read before of the dictionary definition or from my knowledge of what we would call pulp in the trade? I am afraid there are two different things. If one would offer this orange pulp that didn't have the skins with it, why, there would be misunderstanding all the way through. And he'd say, "Well, you bought orange pulp." I'd say, "Well, that isn't orange pulp. It's got to have the skins with it." Maybe that's a pulp without the skins, but it wouldn't be the orange pulp, it would be the inside soluble solid of the orange; the pulp with the soluble solids of the orange.

The primary point at issue herein is whether the imported merchandise is to be classified as fruit pulp or as oranges. Since the *eo nomine* provision for oranges in paragraph 743 is without limitation, plaintiffs claim that oranges in all forms are included under the well-settled principle that an *eo nomine* statutory provision, without limitation or a contrary legislative intent, judicial decision, or administrative practice, and without proof of commercial designation, includes all forms of the article. *Nootka Packing Co.* v. *United States,* 22 C. C. P. A. (Customs) 464, T. D. 47464. Defendant contends, on the other hand, that Congress intended all fruit pastes and fruit pulps to be classified under paragraph 752 (unless specially provided for) and that, therefore, the instant merchandise comes under one of the exceptions to the rule.

It has been held that mandarin oranges, peeled, with the segments separated, and the membrane removed, and packed in sirup, were dutiable under paragraph 743, Tariff Act of 1930, as oranges, rather than under paragraph 752 as fruits, prepared or preserved. *Nozaki Bros.* v. *United States,* 64 Treas. Dec. 914, Abstract 25335, affirmed on rehearing, 68 Treas. Dec. 1091, Abstract 32355; *Nozaki Bros.* v. *United States,* 71 Treas. Dec. 790, T. D. 48974. Kumquats, preserved in sugar or in sugar and honey, or dried, have also been classified as oranges, rather than as prepared or preserved fruit. *Quong Lee & Co.* v. *United States,* 10 Cust. Ct. 23, C. D. 716; *United States* v. *Fung Chong Co.,* 34 C. C. P. A. (Customs) 40, C. A. D. 342.

On the other hand, merchandise, consisting of slices of orange, including the skin, segments, and pulp, candied or glacé, has been held dutiable under the provision in paragraph 752, Tariff Act of 1930, for "candied, crystallized, or glacé apricots, * * * and other fruits, not specially provided for," rather than under paragraph 743 as oranges. *S. T. Linhart* v. *United States,* 8 Cust. Ct. 38, C. D. 578, affirmed on rehearing, 10 Cust. Ct. 232, C. D. 760. In the decision on rehearing, the court pointed out that the provision in paragraph 752 for candied fruit was new legislation not contained in the predecessor paragraph in the Tariff Act of 1922 and concluded that Congress had singled out such fruits for special consideration and intended to assess a uniform rate on all fruits so prepared unless specially provided for in that condition in some other paragraph. The congressional intent being manifest from the enactment of the new provision, the merchandise was held to come within one of the exceptions to the rule that an *eo nomine* designation, without limitation, includes all forms of the article.

The provision for fruit pastes and fruit pulps in paragraph 752, Tariff Act of 1930, is also new legislation not contained in predecessor paragraphs of earlier tariff acts. It was before the court in *United States* v. *A. Sahadi & Co., Inc.,* 23 C. C. P. A. (Customs) 293, T. D.

48165. The court held that merchandise, consisting of apricots which had been processed into a paste or pulp and subsequently dried, was dutiable under paragraph 735 as apricots, prepared or preserved, rather than as fruit paste or pulp under paragraph 752, but in the course of the opinion the court stated (pp. 296–297):

The contention that the merchandise is not apricots, dried, in a tariff sense, is supported, we think, by a consideration of the fact that if the paste or pulp which was spread on the board had been shipped to this country in an undried condition, it is probable that it would not have been dutiable under paragraph 735, but would have found classification as a paste or a pulp under paragraph 752, although it, in fact, was apricots prepared or preserved. * * * The legislative history suggests that although Congress understood apricot paste or pulp to be prepared or preserved apricots, it intended that such pulp or paste should be dutiable under paragraph 752. * * *

See also *Inter-Americas Shipping Co.* v. *United States*, 40 C. C. P. A. (Customs) 100, C. A. D. 504, wherein it was held that merchandise invoiced as "banana pulp with 16% sugar added," consisting of macerated bananas, sugar, honey, and benzoate of soda, cooked and canned, was dutiable as fruit paste or fruit pulp rather than as bananas, prepared or preserved.

We conclude that Congress intended the provision for fruit pastes and fruit pulps in paragraph 752 to cover all fruit pastes or pulps, unless specifically provided for elsewhere as such. Therefore, if the involved merchandise is fruit pulp, as that term is commonly and commercially understood, it is properly classifiable under paragraph 752.

The term "pulp" has been defined as follows:

Webster's New International Dictionary (1951 edition):

1. A moist, slightly cohering mass, consisting of soft, undissolved animal or vegetable matter. * * *
2.a The soft, succulent part of any fruit; as, the *pulp* of a grape, orange, etc.

Funk & Wagnalls New Standard Dictionary (1942 edition):

1. A moist, soft, slightly cohering mass of matter, usually organic.
2. Specif.: (1) The soft succulent part of fruit; as, the *pulp* of grapes.

The merchandise involved herein consists of the succulent part of the orange in a moist, soft condition, together with strips of peel. It corresponds to the dictionary definition of "pulp," except for the addition of the peel. However, according to the uncontradicted testimony of Mr. Abrahams, this merchandise is known by everyone in the trade as bitter orange pulp, and a product without the strips of skin would not be accepted as orange pulp. While this testimony is advisory only, it may be of great aid to the court in determining the common meaning of the tariff term "fruit pulp" when applied to the instant merchandise. *United States* v. *R. E. Macksoud, Central Maderia Corp.*, 27 C. C. P. A. (Customs) 218, C. A. D. 87; *United*

*States* v. *Florea & Co., Inc.*, 25 C. C. P. A. (Customs) 292, T. D. 49396. We note also that when the Tariff Act of 1930 was being prepared, the Committee on Ways and Means of the House of Representatives stated in a report to accompany the bill (p. 76) that new classifications were made in the fruit paragraph to correspond with *commercial* practices.

In our view, the instant merchandise is a form of fruit pulp classifiable under paragraph 752 of the Tariff Act of 1930. The provision for fruit pulp, being an *eo nomine* classification, includes all forms of the article. *Nootka Packing Co.* v. *United States, supra.* While the addition of the strips of peel may make it more desirable for the manufacture of orange marmalade. it does not change the product into something other than fruit pulp, taking it out of that classification. *United States* v. *Nippon Co.*, 32 C. C. P. A. (Customs) 164, C. A. D. 303; *United States* v. *Procter & Gamble Mfg. Co.*, 34 C. C. P. A. (Customs) 71, C. A. D. 345.

We hold, therefore, that the merchandise involved herein was properly classified by the collector as fruit pulp, dutiable at 35 per centum ad valorem under paragraph 752 of the Tariff Act of 1930.

The protest is overruled and judgment will be rendered for the defendant.