T. M. Duche & Sons, Inc., et al. *v.* United States (No. 4867)[1]

United States Court of Customs and Patent Appeals, February 8, 1957

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* and *E. Thomas Honey* of counsel) for appellants.

*George Cochran Doub,* Assistant Attorney General and *Richard E. FitzGibbon,* Chief, Customs Section for the United States.

[Oral argument October 4, 1956, by Mr. Blauvelt and Mr. FitzGibbon]

Before Johnson, Chief Judge, and O'Connell, Worley, Cole, and Rich, Associate Judges

Rich, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, C. D. 1739, overruling the protests and holding the merchandise, "bitter orange pulp," dutiable as classified. Appellants moved to incorporate the record of a prior case involving the same merchandise, *John J. Brunner Agency, Inc. v. United States,* 32 Cust. Ct. 80, C. D. 1584, which motion was granted so that the evidence in that case is before this court. No appeal was taken in the *Brunner* case, *supra* (hereinafter referred to simply as the *Brunner* case). The lower court reached the same result in both cases and held in the present case that its prior decision in the *Brunner* case was "*stare decisis* of the issue" in the instant case.

---

[1] C. A. D. 638.

There is no issue of fact as to the nature of the imported merchandise, the briefs of the parties being in complete agreement on this point. It was stipulated to be the same in both this and in the *Brunner* case and, as shown by a label, Exhibit A in the prior suit, it was called "bitter orange pulp." It was apparently described on the invoices involved in the numerous protests consolidated for trial in the two suits either by the same name or simply as "orange pulp."

The nature of the merchandise is perhaps best described in the testimony, in the *Brunner* case, of José Marín, manager and technical director of Conservas Trigo, S. A., Valentia, Spain, taken by deposition at Valentia where the product was made by his company. It was imported by domestic manufacturers of orange marmalade who used it for that purpose. It was made from the bitter, or Seville, orange. Mr. Marín said:

> The oranges are washed, cut in halves, and the skin separated from the pulp. The skins are cut in fine strips. Both are boiled separately. Degree of boiling depends upon the variety and stage of ripeness of the oranges. Finally, the pulp and skin-strips are mixed, canned, and sealed and sterilized.

He further testified in answer to an interrogatory asking him to state all the ingredients, "No ingredients used; only oranges minus seeds." He said no brine or pickling agents were used in the preparation of the merchandise.

This canned orange product was classified by the Collector of Customs as fruit pulp under paragraph 752 of the Tariff Act of 1930. The importers' only contention on this appeal is that the merchandise should be classified as oranges under paragraph 743.

The applicable provisions are:

> Par. 743. * * * oranges, 1 cent per pound; * * *.
> Par. 752. * * * fruit pastes and fruit pulps, 35 per centum ad valorem; * * *.
> Par. 752 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802] * * * fruit pastes and fruit pulps * * * 17½% ad valorem.

No contention is made that the merchandise is fruit paste so the issue resolves itself to this: Is the imported "bitter orange pulp" properly classified as oranges or as fruit pulp? The lower court has twice held that it is fruit pulp, hence this appeal. The issue presented is not one of fact, as stated in appellee's brief. As we have pointed out, the facts in this case are not disputed. It is a question of statutory construction or law.

We shall consider first the question of what is meant by "oranges," as that term has been construed by the courts. It would appear that the only case in which this court has dealt with this specific question is *United States* v. *Fung Chong Co.*, 34 C. C. P. A. (Customs) 40, C. A. D. 342. We there affirmed the holding of the Customs Court that "2 Cases Dried Sweet Kumquat Orange in jar" and "10 Cases Pres. Kumquat Orange in jar" were dutiable as oranges under para-

graph 743. True, the issue principally dealt with in this case was whether a kumquat was a species of orange, a point the appellant conceded, so far as common meaning was concerned, in attempting in vain to prove a commercial meaning which excluded kumquats. Taking kumquats to be oranges, however, we point to the fact that there was an adjudication that they were still oranges under paragraph 743 even though they had been dried, or preserved, and packed in jars, to that extent having been changed from the natural state of oranges.

In *Nozaki Bros., et al.* v. *United States*, 71 Treas. Dec. 790, T. D. 48974, the Customs Court held that mandarin oranges, without peel, divided into their natural segments, with membrane removed, and canned in sirup were dutiable as oranges under the specific provision of paragraph 743 rather than as "fruits, prepared or preserved" under paragraph 752, a more general provision. The same result was reached in an earlier case of the same name, Abstract 32355, 68 Treas. Dec. 1091, the merchandise in the two cases being the same, and in *Quong Lee & Co., et al.* v. *United States*, 10 Cust. Ct. 23, C. D. 716, where the merchandise was kumquats preserved whole by being coated with sugar or packed in sugar and honey.

From the foregoing it is clear that the statutory term "oranges" is not limited to the fruit in its natural state but encompasses oranges which have been subjected to a variety of processing steps which have not destroyed the identity of the oranges or converted them into something else. This construction is in accord with the decisions of this court in parallel situations as, for example, *Nootka Packing Co., et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464, wherein we held canned, cooked, minced clam meat in brine to be "clams * * * in air-tight containers" rather than "shell fish, prepared or preserved." In the majority opinion in that case the court said:

The mere mincing of the clams, or cleaning them, or cooking them, does not remove them from the designation of clams. The cases are plentiful in support of this proposition.

One of the cases we there cited with approval was *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T. D. 35977 in which the question was whether cooked soya beans in cans or jars were dutiable as "Beans * * * prepared or preserved, or contained in tins, jars, bottles, or similar packages" or were free of duty under the specific provision for "soya beans." The Court of Customs Appeals said (p. 416):

Whatever may have been the treatment to which the goods were subjected, it is clear * * * that their preparation, cooking, or salting did not alter their status as beans or change or modify them sufficiently to prevent their identification as soya beans. It is a fact that they are something more than soya beans in

the natural state, but on the record they are not something more than soya beans in the sense that they are something else. That is to say, they are soya beans advanced in condition, but not so far advanced as to be converted into a new article. (Authorities cited.)

The specific provision for soya beans was held to be applicable over the more general provision for prepared or preserved beans generically.

In *Crosse & Blackwell Co.* v. *United States*, 36 C. C. P. A. (Customs) 33, C. A. D. 393, we held that peeled, pitted, sliced and pickled turpentine mangoes were dutiable under the *eo nomine* provision for mangoes rather than as fruit in brine, pickled or otherwise prepared or preserved, on the basis of the well established rule that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

The term "oranges" here involved is such an *eo nomine* provision. It is clear to us that the "bitter orange pulp" in this case is, realistically, still oranges, advanced in condition, to be sure, in the direction of their ultimate use in orange marmalade, but not so far advanced as to have lost their identity or to have become a different article. The oranges in this case were not even as far advanced as the clams, soya beans or mangoes in the cases above referred to. At least no other ingredients had been added to them. We therefore hold that the imported merchandise is within the *eo nomine* provision for oranges in paragraph 743, as contended by the importers-appellants.

The Government, appellee, as did the court below, takes the position that the Tariff Act provision for "fruit pulps" is also an *eo nomine* classification and predicates its argument on the same rule urged by appellants with respect to such classifications, that all forms of fruit pulps are included, citing the additional cases of *United States* v. *Nippon Co., et al.*, 32 C. C. P. A. (Customs) 164, C. A. D. 303 and *United States* v. *Procter & Gamble Mfg. Co.*, 34 C. C. P. A. (Customs) 71, C. A. D. 345. These are merely cumulative and require no discussion. The rule is not questioned, only its application.

It seems to us that appellee's application of the term *"eo nomine"* is a perversion. In *Brown & Co.* v. *United States, supra*, at page 417 the court said:

* * * an *eo nomine* designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of *general* description and to enumerations which are *broader in scope* and *less specific*. (Italics ours.)

"Fruit" is surely a broad general class designation as compared to "oranges." "Pastes" and "pulps" are likewise generic terms. When modified by the adjective "fruit" they still take in a wide range of products, including pulps of all fruits. We think that there is at least considerable doubt whether the application of the *eo nomine*

rule to the term "fruit pulps" made by the lower court and by the appellee is justifiable. Be that as it may, the term "pulp" is clearly ambiguous since it has two diverse meanings, depending on the context. One refers to the physical state of matter and the other to a particular part of fruit. The dictionary definitions from Webster quoted by the lower court in the opinion in the incorporated *Brunner* case make this clear:

1. A moist, slightly cohering mass, consisting of soft, undissolved animal or vegetable matter.
2. a. The soft, succulent part of any fruit; as the *pulp* of a grape, orange, etc.

Our investigation of the legislative history of paragraph 752, wherein "fruit pastes and fruit pulps" appeared for the first time in the Tariff Act of 1930, has shed no light on which meaning was intended by Congress and neither party has discussed this point. The lower court *Brunner* opinion ignores the difference and combines the two definitions as though they were one. Having done this, it then states that the imported merchandise "corresponds to the dictionary definition of 'pulp' *except for the addition of the peel.*" (Emphasis ours.) This is a tacit admission that it does not correspond. In this situation the lower court nevertheless concluded that the merchandise "is a form of fruit pulp," under paragraph 752. As we see it, it did this on the following three grounds, each of which we regard as unsound for the reasons we shall state:

(1) That the common meaning of "fruit pulp" included "bitter orange pulp" because it was dealt in by that name, and the marmalade manufacturing trade would not accept as "orange pulp" a product which did not include the peel.

The mere fact that it was dealt in under a name including the word "pulp" is not enough to bring it within the statutory class. See *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092, holding that the product "cod-liver oil-cake meal" was not within the common meaning of the statutory class "oil-cake meal" and was not brought within the statute by virtue of the name under which it was bought and sold.

(2) That the report of the House Committee on Ways and Means which accompanied the bill which became the Tariff Act of 1930 said (p. 76) "that new classifications were made in the fruit paragraph to correspond with *commercial* practices." (Emphasis by the court below.)

There were several new classifications in the fruit paragraph involving commercial practices, including candying, glazing, crystallizing and packing fruits in their own juices. We find nothing to indicate that the comment in the report referred specifically, or indeed had any reference, to the new class "fruit pastes and fruit pulps." We can

therefore find no indication in this of an intent to include "bitter orange pulp" in paragraph 752.

 (3) That "fruit pulp" (the term used by the lower court) is an *eo nomine* provision and therefore includes all forms of the article.

We have already indicated our doubts about the soundness of this proposition in general. The statutory term is "fruit pulps" which must have been intended to include a variety of products and therefore lacks specificity. It has not been contended that the sliced peel, an important constituent of the "bitter orange pulp," was either the pulp of the fruit or physically reduced to a pulp.

We are therefore of the opinion that the lower court's reasoning does not support its conclusion. The same may be said for the appellee's arguments which are, in substance, a mere repetition of that reasoning.

We are further of the opinion that the imported "bitter orange pulp" is not within the term "fruit pulps" of paragraph 752. On the present record we do not decide just what the term does include because the evidence in this case relates only to the nature of the imported merchandise, what the merchandise was called, and what, in the witnesses' opinions, constituted the pulp of an orange in the botanical sense. This, however, does not preclude us from deciding that the merchandise involved here is *not* a fruit pulp under this provision of the Tariff Act.

Adverting first to the physical condition aspect of the dictionary definition ("1", *supra*), we emphasize that it calls for a "slightly cohering" mass. This ties in with another definition given in Webster's which has not been mentioned by either party or the lower court:

> Any soft mass of vegetable matter, as of beets, from which most of the water has been extracted by pressure.

There is no evidence that any water (or fruit juice, which is mostly water) was extracted in producing the "bitter orange pulp" and it seems highly improbable that the mass had sufficient, if any, cohesiveness so as to be pulp in this sense. Unfortunately the jar of "bitter orange pulp" which was in evidence deteriorated and has been destroyed, as a witness predicted it would. The trial court saw it, however, and said, "It appears to consist of the inside portion of the orange in a moist, soft condition and thin strips of orange peel." (*Brunner* case opinion). We do not believe the oranges had been reduced to a pulp in this sense of the word.

The other, or botanical, definition of pulp ("2", *supra*) excludes the rind or peel of the fruit. The merchandise was full of peel and for this reason cannot be classified as pulp in this sense. Furthermore,

the Tariff Act specifically recognizes orange peel as another commodity in paragraph 739. Thus, as appellant has pointed out, a distinction is recognized between oranges, fruit pulp (however it may be defined) and orange peel. It would be as logical to contend that the merchandise is orange peel as to contend that it is orange pulp, in the botanical sense of the term. It seems highly improbable that Congress used the word "pulps" in a botanical sense. The juxtaposition of the terms "pastes" and "pulps" tends to indicate reference to physical condition.

*Inter-Americas Shipping Co.* v. *United States*, 40 C. C. P. A. (Customs) 100, cited by the Customs Court, is easily distinguishable from the instant case. In that case it was held that macerated bananas, to which sugar, honey, and a preservative had been added should be classified as "fruit pastes and fruit pulps" rather than as "bananas prepared or preserved." The merchandise had been so processed that it had lost its identity as bananas and had become a new article, distinct in character and use from the article out of which it had been made. We feel that the instant merchandise has not been so processed as to lose its identity and become a new article, i. e., fruit paste or fruit pulp. It is also noted that in the instant case the "bitter orange pulp" is not distinct in use but is used in the same process in which whole, unprocessed oranges had previously been used.

Appellant has raised the question of proof of commercial designation, contending that no commercial meaning has been proved with respect to the statutory term "fruit pulps." Appellee has not contested this point and has relied only on common meaning, contending that "for purposes of classification herein the term 'fruit pulp' has the same meaning as if the Congress had used the words 'orange pulp'." We are constrained to decide this case on the basis of the words which Congress actually used, not words it might have but did not use. As between the specific provision for "oranges" without qualification and the broad class "fruit pulps," it is our opinion that the merchandise is in the former category.

For the reasons set forth above the judgment of the United States Customs Court is *reversed* and the case *remanded* for further proceedings consistent with this opinion.

COLE, J., was present at the argument of this case, but, because of illness, did not participate in the decision.

————

JOHNSON, Chief Judge, and WORLEY, Judge, concurring.

At first impression it would seem that the word "oranges," as ordinarily understood, would not include such a mixture of boiled pulp and cut and boiled skin as is involved here. It seems clear, however, that such a mixture is no further removed from the original

oranges than the cleaned, minced and cooked clams in the *Nootka Packing Co. et al.* case were removed from the original clams; or the peeled, pitted, sliced and pickled mangoes of the *Crosse & Blackwell Co.* case from the original mangoes. Accordingly, we are constrained to agree that, in accordance with the principles laid down in prior decisions, the word "oranges" as used in paragraph 743 of the Tariff Act of 1930 should be construed as embracing the instant merchandise.